VANNEST V. FLEMING.

1. **Waters**: COLLECTION BY TILE DRAINS : CASTING ON LOWER ESTATE. The owner of the dominant or higher estate has the right to conduct the water falling upon his land, by means of underground tile drains, into the channel provided by nature for the drainage of his land, and through such channel to cast it upon the servient or lower estate.

2. ———— : DRAINAGE BY ACQUIESCENCE : SUBSEQUENT CHANGE. Where a drain or ditch has been established by the acquiescence of two adjoining land-owners, and it is required by the best interests of both owners, and the manner of its construction is in accord with the natural flow of the water, and the quantity of the water has not been increased nor its flow diverted by the owner of the higher land, the lower or servient owner cannot obstruct or abolish the ditch without the consent of the upper owner; and the rights and duties of the parties pass to their grantees with the land.

3. ———— : DRAINAGE BY AGREEMENT : SUBSEQUENT CHANGE. Where a ditch for the drainage of surface water has been constructed jointly by two adjoining land-owners, under an oral agreement as to its course, etc., each party contributing labor or money to its construction, and they have recognized the ditch by plowing and farming in accord with it, neither can set aside or disregard it without the consent of the other.

*Appeal from Mahaska District Court.*—HON. J. K. JOHNSON, Judge.

FILED, FEBRUARY 12, 1890.

ACTION in chancery to enjoin defendant from interfering with the flow of water from plaintiff's land upon the adjoining lands of defendant. There was a decree granting part of the relief prayed for by plaintiff, and refusing part. Both parties appeal,—the defendant first, and he is therefore designated as "appellant."

*John F. Lacey, W. R. Lacey* and *Bolton & McCoy,* for appellant.

*Blanchard & Preston,* for appellee.

BECK, J.—I. The petition is in two counts. The first alleges that plaintiff owns one hundred and sixty acres of land, and defendant owns an eight-acre tract adjacent thereto, on the west; that for many years there has been upon plaintiff's land a natural drain, or open ditch, two or three feet deep, being a natural water-course, which begins near the center of the track, and runs in a southwesterly direction, crossing the division line of defendant's land about twenty rods north of the southwest corner thereof, and thence across it; that this drain or water-course is the natural outlet of the water falling and accumulating upon a part of plaintiff's land, and is the natural drainage thereof; that defendant dammed up the drain at or near its entrance upon defendant's land, but the dam was washed out by the floods, and defendant threatens to rebuild it, and that the water arrested in its flow off of plaintiff's land, and caused to remain thereon by the dam, would prove to be a source of great injury thereto, which would prove irreparable, if the dam be permitted to remain.

The second count alleges that plaintiff and defendant, at the time being owners of their respective tracts of land, entered into an oral agreement that plaintiff should cause an open ditch to be dug, other than the one referred to in the first count, which should run westerly from the northwest part of plaintiff's land, and cross the line of defendant's land about thirty rods south of the northeast corner thereof, and should run thence upon defendant's land according to lines and distances set out in the petition, which need not be repeated here; that the parties should unite in constructing this ditch, each doing a part of the work, as stated in the petition; that each party was to have the right to connect tile drains with the ditch; and that defendant threatens to destroy the ditch, or drain, and render it useless, which would work great injury to plaintiff. The defendant, in answer to the first count, of the petition, after denying, generally, all allegations thereof, admits the existence of the ditch described in

the first count of the petition, but alleges that it is not a natural water-course, but an artificial ditch. He admits that he obstructed the ditch, but denies that the flow of the water was thereby interfered with, and alleges that plaintiff's land, at the place in question, is higher than defendant's land; that the ditch is not necessary for the proper drainage of plaintiff's land, the natural depression of the land being sufficient therefor; that it is his intention to fill up the ditch on his own land, but not to obstruct the flow of the water upon plaintiff's land; and that the ditch, with steep banks, is an injury to defendant's land.

In answer to the second count of the petition, defendant admits that the other ditch—the more northerly one—was dug at the mutual expense of the parties, pursuant to a verbal agreement made by the parties, which did not provide how long it should remain, but that it should be tiled in the future, if defendant so required, and that the ditch was not dug in compliance with the agreement. It is alleged that defendant now requires the ditch to be tiled, one-half of the expense whereof he proposes to pay.

Defendant, in a cross-petition, prays that plaintiff may be enjoined from collecting the water into the ditch described in the first count by tile drains, and thereby causing it to flow upon defendant's land. The cross-petition contains allegations in this language: "That defendant's land is lower than plaintiff's, and that the plaintiff's surface is drained naturally upon defendant's land, but that plaintiff has no lawful right, by drainage, to concentrate the underground water and to cause it to flow from a single point upon defendant's land, and that by so doing he has attempted to impose upon defendant's land a burden which it is not required by law to bear." The allegations of the cross-petition are denied by plaintiff in a proper pleading. Upon the final hearing on the merits, the court found the equities with defendant upon the first count of the petition, which was dismissed by the decree; and upon the second count the equities were found with plaintiff, and

the relief prayed for thereon was granted. The defendant's cross-petition was dismissed.

II. The evidence and the pleading show that plaintiff's land is the higher, and is naturally drained over defendant's land by two "sloughs," as they are called in the pleadings ("swales" is a better designation), which run from or through plaintiff's land to and over defendant's. There is no other way of carrying the surplus water, caused by snow and rains, off of and away from plaintiff's land, except through these swales. They also drain defendant's land, which has no other drainage. The case is not one of water, which would not naturally run upon defendant's land, being diverted and brought there by the unlawful acts of plaintiff, but is simply the case of the natural drainage of a tract of land through the swales prepared by nature for that very purpose. The two parties happen to own this tract of land; and the defendant, the owner of the servient estate, attempts to resist the undoubted right of plaintiff, the owner of the dominant estate, to have the surplus water falling upon his land conducted by nature's water-way off of his land to the brook, the creek and the river, the great natural drains of the country. The ground of this resistance is that this water from plaintiff's land passes over defendant's farm. But, as the water from defendant's land must pass over his neighbors' lands below him, which are servient to his lands, he is attempting to impose restrictions upon plaintiff which, with the same claim of right, could be imposed upon him, with equally disastrous results.

It is insisted that plaintiff is violating the law and rights of defendant by collecting the water — "underground water," it is called in defendant's

1. WATERS: collection by tile drains: casting on lower estate.

pleadings—by tiles, and conducting it to defendant's land at one place, which, it is claimed, is not permitted by the law. It will be readily seen, upon a moment's reflection, by one having but a limited acquaintance with the subject,

upon the consideration of the facts developed in the evidence, that there is no difference between underground water, collected by tiling, and surface water. The first is water which would run off in a ditch, were one dug, without entering the earth. But it is permitted to enter the earth, and is then, by natural means, attracted and conducted to the tiles, and through them flows away. It must be remembered that the lands of both parties are used for cultivation with the plow. The fact is known by every intelligent observer, who has directed his eyes over the surface of our beautiful and fertile agricultural lands, that the swales are our most productive lands, while the sward of the prairie grass, and of other natural grasses, remains unbroken. There are no ditches or gutters in the swales. They, of course, are of various widths, depending largely upon the abruptness and height of the little hills or elevations of which they constitute the valleys. When the sward is broken by the plow, the water from rains and snows has a tendency to seek a channel down the swale, which will, of course, be no wider than is required to conduct away the surplus water falling on the land drained by the swale. This channel will soon become a ditch after the sward is broken; and, if left to nature, it will be sinuous, directed by the laws of nature, which give all water-courses that character. But the intelligent husbandman will aid water in this regard, and, with his plow or his shovel, will keep the ditches straight. He will not act the foolish part of attempting to do that which is impossible, namely, to keep the surplus water flowing over all the surface of the swale ; for the reason that it would prove impossible, and, if successful, it would cost him his crops, and finally impoverish his land, by causing the fertile soil to be washed away. In the case before us, both parties, if they be intelligent farmers, do this very thing. Plaintiff, instead of an open ditch, put in tile, which subserves the same purpose. Now, these farmers are not diverting the water from the water-way provided by nature. They are not seeking to conduct the water contrary to the course of nature, or in a way

Vannest v. Fleming.

it did not run before the soil became the property of man. When the use of the soil is changed from nature's husbandry, the production of grasses from meadows and pastures, to the cultivation of grain by means of the plow, nature continues to direct the water in channels. The plaintiff does not conduct the water to and upon defendant's land in a manner differing from that manner in which it was conducted before the land was plowed. The manner, in each instance, is nature's manner. Of course, the manner, in one instance, under the laws of nature, provides for a ditch; in the other instances, the laws of nature, under which was produced the sward of the prairie grass, dispense with a ditch.

III. It is shown by the evidence—indeed, defendant himself so testifies—that the ditch referred to in the first count was made upon defendant's land, before he owned it, by the farmer who then owned and cultivated the land. It seems that defendant's grantor, and the plaintiff or his grantor, were in accord in their views as to the ditch, and its course through the two tracts of land, and, either by express agreement or by mutual and silent acquiescence in the manner pursued by each in the improvement, by drains, of their respective lands, agreed upon the construction of the ditch, and the line it should pursue. Its place of crossing the dividing line of the lands, in this manner, was settled. The law will not permit complaint to be now made of the location and manner of construction of the ditch, after it has been acquiesced in by the parties. The rights of the parties demand that the ditch should remain a settled matter. Good husbandry forbids the changing of ditches. Their permanence prevents the washing away of the soil, as well as avoids expenses in the change.

2. ——: drainage by acquiescence: subsequent change.

IV. Upon the first count of the petition, and defendant's cross-petition, we reach the conclusions: (1) That the ditch is required by the best interest of both proprietors; (2) that the manner of its construction is in accord with the natural flow of the water; (3)

that the quantity of the water has not been increased, and its flow has not been diverted, as charged; (4) that the ditch was established by the acquiescence of the proprietors, and that defendant threatens to interfere with, and change, the flow of the water, by building and maintaining a dam in the ditch; (5) that the ditch cannot be dispensed with, nor its course changed, without the consent of the parties interested. This conclusion is in accord with the doctrines of *Livingston v. McDonald*, 21 Iowa, 160, and is supported by familiar principles of the law. See *Pratt v. Lamson*, 2 Allen, 275.

V. The evidence very plainly leads to the conclusion of fact that the ditch described in the second count was constructed jointly by the parties, under an oral agreement as to its course, etc., each party contributing labor or money to constructing it. The parties have recognized the ditch, have plowed and farmed in accord with it, and have expended money and labor in the performance of the contract. It can be set aside, disregarded and annulled by neither without the consent of the other. The assent of defendant to the construction of the ditch on his land is in the nature of a license which, having been accepted, and the rights conferred assumed and exercised, cannot be set aside or disregarded. *Harkness v. Burton*, 39 Iowa, 101; *Cook v. Railway Co.*, 40 Iowa, 451; *Anderson v. Simpson*, 21 Iowa, 399; *Beatty v. Gregory*, 17 Iowa, 109.

VI. These considerations lead us to the conclusion that the decree of the district court ought to be affirmed as to the second count, and as to the dismissal of defendant's cross-petition, and reversed as to the dismissal of the first count of the petition. A decree ought to have been entered granting the plaintiff all the relief prayed for in his petition, both upon the first and second counts, and dismissing the cross-petition of defendant. The cause will be remanded to the court below for such a decree. MODIFIED AND AFFIRMED, ON DEFENDANT'S APPEAL; REVERSED ON PLAINTIFF'S APPEAL.