L. J. WHARTON, Appellee, v. JOSHUA STEVENS, Appellant.

Water Courses: DRAINAGE: RIGHTS OF ADJACENT OWNERS. Where a swale, having branches upon the plaintiff's farm, extended into and through the defendant's farm, the water being discharged into a creek beyond, and there was a ditch in the swale about three feet deep which had been washed out by the natural action of the water, *held,* that the plaintiff was entitled to have the defendant enjoined from maintaining a dam across the ditch and swale, so as to interfere with the free flow of water from tile drains constructed upon the plaintiff's land to facilitate the discharge of the water from the swale into the ditch.

*Appeal from Mahaska District Court.*—HON. D. RYAN, Judge.

THURSDAY, DECEMBER 17, 1891.

ACTION in chancery to enjoin the defendant from maintaining a dam or obstruction to the flow of water,

erected by him across a ditch in a swale leading from the plaintiff's land through that of the defendant. Upon a trial on the merits there was a decree granting the relief sought in the plaintiff's petition. The defendant appeals.—*Affirmed.*

*J. F. & W. R. Lacey* and *Seevers & Seevers,* for appellant.

The filling up of the lower land will not render the owner liable to the owner of the upper land, although the filling should stop the flow of mere surface water. *Goodale v. Tuttle,* 29 N. Y. 467; *Pettigrew v. Evansville,* 25 Wis. 223; Washburn on Easements [3d Ed.] 459; *Gannon v. Hargadon,* 10 Allen, 106. A landowner has not the right to concentrate surface water in a tile drain and cast it on his neighbor's premises. *Livingston v. McDonald,* 21 Iowa, 161; Goddard on Easements, [Bennett's Ed. 1888] 241; Washburn on Easements [3d Ed.] 459; *Goodale v. Tuttle,* 29 N. Y. 467; *Pettigrew v. Evansville,* 25 Wis. 228; *Miller v. Lanbach,* 47 Pa. St. 155; *Butler v. Peck,* 16 Ohio St. 334; *Dickinson v. Worcester,* 7 Allen, 22; *Bowlsby v. Speer,* 31 N. J. Law, 354; Washburn on Easements [3d Ed.] 282, 283, 284, 453, 454, 455, 456, 457, 458, 459, 460, 461, 462; *Flagg v. Worcester,* 13 Gray, 601; *Wheeler v. Worcester,* 10 Allen, 603; *Franklin v. Fisk,* 13 Allen, 311.

*Blanchard & Preston,* for appellee.

The law of this case is fully covered by the case of *Vannest v. Fleming,* 79 Iowa, 638. The rule established by this court is abundantly sustained by the decisions of other courts, some of them going much further. *McCormick v. Horan,* 81 N. Y. 86; *Jeffers v. Jeffers,* 107 N. Y. 650; *Peck v. Goodberlett,* 109 N. Y. 180; *West Cumberland Iron & Steel Co. v. Kenyons,* L. R. Ch. Div. 782; *Anderson v. Henderson,* 124 Ill. 164; *Pratt v.*

*Lamson*, 2 Allen, 275; *Ford v. Carbon Iron Mfg. Co.*, 42 N. J. Eq. 157; *Penn. Coal Co. v. Sanderson*, 113 Pa. 126; *Kauffman v. Griesmer*, 26 Pa. St. 407, 415; *Osburne v. Connor*, 46 Cal. 346; *McDaniels v. Cummings*, (Cal.) 22 Pac. Rep. 216. The owner of the upper field may improve and drain it for agricultural purposes or the like, and in so doing may increase the flow of water in the natural channel for it. *Davidheiser v. Rhodes*, (Pa.) 19 Atl. Rep. 401; *Taylor v. Feckas*, 64 Ind. 173; *Wells v. City of Madison*, 75 Ind. 241.

BECK, C. J. — I. The facts of the case, as shown by the undisputed evidence or a satisfactory preponderance thereof, are not at all intricate, and, briefly stated, are as follows: The farms of the parties join. A swale, having branches upon the plaintiff's farm, extends into and through the defendant's farm. The rain and snow water collected on the plaintiff's land by the natural depression flows in the swale across the defendant's land, finding its discharge in a creek or brook beyond. There are no springs upon the plaintiff's land. The breadth of land which these swales drain is shown to be about eighty rods, and the hills and elevated lands on each side are about fifteen feet high. There is a ditch in the swale washed out by the natural action of the water, which is shown to be three feet deep. It extends to and upon the defendant's land for some distance, but not through his farm. The plaintiff has put tiling along the swales, there being two drains at proper distances from the middle of the swale, so as to catch the seep at or near the foot of the declivity along the swale. These drains, uniting at the main swale, extend to within three feet of the defendant's land, and discharge there into the ditch. The source of these drains is shown to be fifteen feet higher than the mouth. The defendant, a few feet below his line, filled up the ditches, and constructed an embankment over it for a roadway, putting in a small wooden culvert, which, he testifies, is about as high as

the surface of the ground. Other witnesses declare it is considerably higher. While the embankment was so constructed as to be used for a road, it was doubtless erected for the primary purpose of arresting the flow of water, and raising it above the mouth of the plaintiff's drain, thus interfering with their usefulness. Before the dam was erected, the drains answered the purpose of their construction; after it was built, they in a great measure failed, as the water could not flow from them freely, but was backed into them for some distance. The dam created a pond extending upon the plaintiff's land to some extent.

II. The controlling question in the case involves the right of the defendant to maintain the dam across the ditch and swale, so as to interfere with the free flow of water from the plaintiff's drains. It must be kept in mind that the ditch in question was the result of the action of the water in accord with nature's laws, and that the swale was the water course provided by nature for the escape of water from the plaintiff's land. Neither was artificial. See *Vannest v. Fleming*, 79 Iowa, 642. It will not be pretended that the defendant could arrest the flow of the water down the swale, if nature, by the action of the water, had made no ditch there. If he could build a dam one foot high, throwing the water back upon the plaintiff's land, he could build it fifteen feet high, did his notions as to the demands of his interest, or his desire to injure the plaintiff, prompt sufficient outlay of labor or money, and he could thus convert the plaintiff's valuable land into a marsh or pond. This dam, the building of which he justifies in this case, does this very thing in a limited degree. But, as we have said, he does not claim to build a dam higher than the natural surface of the swale. He admits the right of the plaintiff to demand that no impediment shall be erected against the flow of the water over the surface of the natural swale, but

2. WATER
courses:
drainage:
rights of adja-
cent owners.

denies his right to conduct water in the ditch, which is, as well as the swale, a natural drainage way for the plaintiff's land.    *Vannest v. Fleming*, 79 Iowa, 638, 642. It would be a bold counsel who would advocate, and a bold court which would decide, that water from rains and thawing snows, which is called by counsel "surface water," when it finds the swales provided by nature to bear it away, may be arrested in its natural course, and made to flow back upon the land which these swales are intended to drain.    The effect of such a decision would be stupendous.    It would subject millions of acres of the best agricultural land to destruction.    It would bring strife, with loss and poverty to a vast number of farmers of the state.    But no counsel asks such a decision and no court would make it.    But counsel do maintain that, where nature has provided a ditch in these swales, the landowner may dam up the water and throw it back upon the land of his neighbor, and in that way prevent the use of his tile drains and create ponds thereon.    This doctrine, if recognized by this court, would forever prevent tiling in swales (the great benefits of which are known to all, and abundantly shown in the evidence in this court), except in cases where the consent of the adjoining proprietors is obtained.    This court is not prepared to recognize a rule so detrimental to the interests of the state, and in conflict with sound legal principles and precedent.    It has held the contrary doctrine, that the drains may be used to carry water accumulating in swales— surface water—and discharge it upon low lands crossed by such swales, which are nature's drains and waterways.    *Vannest v. Fleming*, 79 Iowa, 642.    See Washburn on Easements [3d Ed.] 450, 452, 453.

III.  The water caused by the swales is called by counsel "surface water," and this talismanic word seems in some cases to take the place of reason and principle in the support of the right of the lower proprietor to throw back upon the higher land the water flowing in ditches

washed out by the natural action of the water. The books often announce the rule that the landowner may fight surface water, which is a common enemy, and keep it off his land, and even throw it upon his neighbor, or back upon the land from which it flows. But the books do not hold that this may be done when there is a waterway over which the water naturally flows. It may be that the language of some cases is so general that it will bear an interpretation to that effect, when nothing of the kind was meant, and no such point was in the case. Counsel cite this language in Washburn on Easements [3d Ed.] found on page 459, viz.: "The common law allows the proprietor of lower tenants to obstruct the natural flow of surface water from higher ground upon it and in so doing may turn it back upon, or off, onto or over the lands of the other proprietors." It will be discovered, by a little consideration, that this is not the language of the author, but is a citation from a Wisconsin case; and, moreover, that it authorizes a proprietor to turn surface water upon the lands of adjoining owners, the very thing which is the defendant's ground of complaint against the plaintiff. Upon this language the plaintiff may turn the water in question "onto or over" the lands of the defendant. The doctrine is clearly laid down on pages 451–453, and elsewhere, by this authority, that the lower proprietor cannot prevent the flow of rain water from the higher lands through natural depressions and channels. There is apparently a conflict of authorities on this point which is not real, resulting from the undefined use of the words "surface water." When such water flows by a well-defined and natural course upon lower lands, that flow cannot be interfered with by either the upper or lower proprietor. But when such water has no defined course, but spreads out over the land without a well-defined course, it may be turned by the landowner in any direction. But where surface water has a fixed and certain course, as a swale, though it may be narrow

or broad, its flow cannot be interrupted to the injury of an adjoining proprietor. The evidence in this case shows that the water of the swale on the plaintiff's land had a considerable fall, sufficient to cause it to cut a ditch three feet deep, which continued upon the defendant's land; that the tiling would not carry off the water except in gentle rains; that heavy rains caused a stream in the ditch; that to render more productive the swale land, and arrest the seep from the little hills, plaintiff put in the tiling; that the tiling causes no increase in the quantity of water, but causes it to pass off more gradually; and that it increases the value of the plaintiff's land. The part of the defendant's land where the ditch had not been cut off may receive the water for a prolonged period, but not a larger quantity, and, if he suffers any inconvenience therefrom, it is very plain that nature will relieve him by continuing the ditch, and by the use of his plow he can so speed the extension of the ditch, which nature will complete in a season or two. Why should he be permitted, in order to protect his swale where slough grass grows, to compel the plaintiff to lose the benefits of the tile drains? It was well said in *Livingston v. McDonald*, 21 Iowa, 173, by DILLON, J., that "we recognize the general rule that each may do with his own as he pleases; but we recognize the qualification that each should so use his own as not to interfere with his neighbor. *Sic utere tuo ut alienum non lædas.*" The defendant cannot use his swale, keeping it in a state of nature, to produce slough grass, and thereby injure the plaintiff's land by rendering it less productive.

This court is not prepared to hold, on the ground that the designation "surface water" is applied to the water flowing in the swale, that though flowing in a well-defined course, with a fall which gives it current sufficient to wash out the ditch, it may be dammed so as to throw it back upon the plaintiff's land, and pre-

vent the proper use of the tile drains. The words "surface water" have no such magic influence as to demand the recognition of rules that would work gross injustice, and arrest the improvements and progress in the cultivation of agricultural lands. As we have intimated, consideration of the books will reconcile the seeming conflicts upon this point. To effect such reconciliation, it is only to be mentioned that the authorities all hold that when water, be it surface water, the result of rain or snow, or the water of springs, flows in a well-defined course, be it in a ditch or swale, in its primitive condition, and seeks discharge in a neighboring stream, its flow cannot be arrested or interfered with by the landowner, to the injury of the neighboring proprietors. These views and conclusions are well supported by the following authorities: *Vannest v. Fleming*, .79 Iowa, 638; *Livingston v. McDonald*, 21 Iowa, 160; Washburn on Easements, [3d Ed.] 450–454; *Anderson v. Henderson*, 124 Ill. 164, 16 N. E. Rep. 232; *Gormley v. Sanford*, 52 Ill. 158; *Gillhan v. Madison County Railroad*, 49 Ill. 484; *Peck v. Goodberlett*, 109 N. Y. 180, 16 N. E. Rep. 350; *Jeffers v. Jeffers*, 107 N. Y. 650, 14 N. E. Rep. 316; *McCormick v. Horan*, 81 N. Y. 86; *Martin v. Riddle*, 26 Pa. St. 415; *Hays v. Hinkleman*, 68 Pa. St. 324; *Pennsylvania Coal Co. v. Sanderson*, 113 Pa. St. 126, 6 Atl. Rep. 453; *Kauffman v. Griesemer*, 26 Pa. St. 407, 415. See *Davidheiser v. Rhodes*, (Pa.) 19 Atl. Rep. 400; *Taylor v. Fickas*, 64 Ind. 173; *Ogburn v. Connor*, 46 Cal. 346; *McDaniel v. Cummings*, (Cal.) 22 Pac. Rep. 216; *Lord v. Carbon Iron Manufacturing Co.*, 42 N. J. Eq. 157, 6 Atl. Rep. 812; *West Cumberland Iron & Steel Co. v. Kenyon*, 11 Ch. Div. 782; 8 Law. Rep. Ann. 277, and notes to *Vannest v. Fleming*, 79 Iowa, 638; *Earl v. De Hart*, 12 N. J. Eq. 280; *Schnitzius v. Bailey*, (N. J. Err. & App.) 18 Atl. Rep. 132. It will be observed that in *Vannest v. Fleming*, 79 Iowa, 638, this court held that, "the owner of the dominant or higher

estate has the right to conduct the water falling upon his lands by means of underground tile drains, with the channel provided by nature for the drainage of his land, and through such channel to cast it upon the servient or lower estate;" and that a swale and a ditch made by the natural flow of the water constituted a channel for the natural drainage of the water. This decision is decisive of the case before us.

IV. Counsel for the defendant insist that *Vannest v. Fleming* is not applicable to the case before us, for the reason that the ditch in that case was dug and maintained under agreement of the owners of the land, the grantors of the respective parties. This is true as to the ditch involved in the first count of the petition, but not of that complained of in the second. The plaintiff in the action claimed to recover for damages sustained by two separate ditches. The first count does not show or allege that the ditch was made by natural causes, by consent, or with the united labor of the parties. See 79 Iowa, 639. The court discusses the question arising on this count without any reference to an agreement or joint labor for the construction of the ditch, for there was none in the case of the first count. See 79 Iowa, 639, 641–643. The opinion, however, holds that, as the parties or their grantors acquiesced in the course of the ditch, they will not now be permitted to complain of its location and manner of construction. But it is not intimated that the plaintiff's rights depended upon the acquiescence of the defendant in the location and manner of constructing the drains.

V. Counsel for the defendant, upon the authority of *Livingston v. McDonald*, 21 Iowa, 161, demanded the reversal of this case. They give undue weight to that case, in view of the questions actually in the case and decided by the court. Much is said in it upon the subject of surface water and the rights and liabilities of landowners involved in the disposition thereof.

The learning and ability displayed in the opinion are great, but it more especially states doctrines recognized by authorities referred to, rather than announces rules of law generally recognized. It illustrates the confusion and uncertainty in many of the books treating of this subject. The learned judge delivering the opinion in the following direct and plain language states the points decided in the case: "The court [below], in substance, laid down the law to the jury to be that, if the ditch in question increased the quantity of water upon the plaintiff's land to his injury, or, without increasing the quantity, threw it upon the plaintiff's land in a different manner from what the same would naturally have flowed upon it, to his injury, the defendant was liable for the damage thus occasioned, even though the ditch were constructed by the defendant in the course of ordinary use and improvement of the farm." "Upon the whole, we think the law in this case was properly stated." The question as to the right of the defendant to flow surface water on the plaintiff's land was not solved adversely to that right.' The court simply inquired whether the quantity of the water was increased, or whether it was thrown upon the plaintiff's land in a different manner from the natural way; and held that, if the question should be answered affirmatively, the defendant was liable. To this ruling there could be no objection. But we have heretofore shown that no increase of water is thrown upon the plaintiff's land. See, also, *Vannest v. Fleming*, 79 Iowa, 641–643. The manner of conducting the water to the defendant's land is not different from what the manner was before the tiles were laid. In each case it is conducted by a drain, —first by an open drain,—a ditch; then by a tile drain, which did not reach the defendant's land, but discharged the water into the old ditch, a little distance from the defendant's land, and it flowed upon the defendant's land at the identical place through which it flowed

before the tiles were put in. The water obviously was thrown upon the defendant's land in the precise manner in which it was conducted before the tile drains were put in. This precise point was determined in *Vannest v. Fleming*, 79 Iowa, 638, 643.

VI. The decree required the defendant to remove the obstructions he put in the ditch so as to restore the flow of the water as it was before the dam was built, and permitted him to have a roadway over the ditch if he maintained an opening for the water to flow under the roadway, as prescribed by the decree. It does not require him to dig any new ditch; simply to take out the obstruction he put in the old one, and keep an opening for the flow of the water.

The foregoing discussion disposes of all points arising in the case which are necessary to be determined in the decision of the case. The judgment of the district court is AFFIRMED.