J. J. Obe, Appellee, v. Jacob Pattat and E. B. Welty, Appellants.

**Drainage of surface water:** DAMAGES. Independent of statute it is the rule that a landowner can not rightfully complain of the increased flow of surface water from adjacent land, the result of artificial drainage, unless the same is cast upon his land by greatly increased or unnatural quantities so as to cause substantial injury to his premises.

**Same:** STATUTE: DAMAGES: EVIDENCE. The statute authorizes a landowner to drain his land into a natural course of drainage and when such drainage is wholly upon his own land he is not liable in damages to anyone. In this action the defendant was not liable in damages to plaintiff although his ditch may have increased the flow of water which would otherwise have taken a longer route to the same ultimate point; and it is not shown that the quantity of water discharged through defendant's ditch was materially increased or that plaintiff's crops had or were likely to suffer therefrom.

*Appeal from Hamilton District Court.*—Hon. C. E. Albrook, Judge.

Thursday, April 6, 1911.

Action in equity to enjoin the construction and maintenance of a ditch. There was a decree as prayed, and defendants appeal.—*Reversed.*

*D. C. Chase,* for appellants.

*Wesley Martin* and *J. E. Burnstedt,* for appellee.

Weaver, J.—The plaintiff owns the west half of the southwest quarter of section 34, township 87, range 25,.

and defendants the one hundred and sixty acres lying immediately east of the described tract. The petition alleges that beginning about midway on the south boundary of defendant's land a natural water course extends in a northwesterly direction until it nears the east line of plaintiff's land and continues to and beyond the north boundary of said lands, along which course the natural drainage of surface waters is conducted; plaintiff's premises being protected therefrom by a ridge or watershed upon the west side of defendants' premises. He further alleges that the defendant (Pattat) and his tenant (Welty) have constructed a ditch by which the natural flow of said waters has been diverted to the westward upon his land to his material injury, and he prays an injunction against the alleged nuisance. The defendants admit the ownership of the lands as alleged, but deny all other allegations of the petition.

The record discloses a distinct failure of proof with respect to the allegation that the natural flow of the drainage is to the north, as well as the further claim that a ridge or watershed extends north and south along or near the west side of the land of the defendants. It does appear that at some time in the past a ditch had been constructed extending northward from the area now under consideration, but proved to be an engineering failure from want of sufficient fall to carry off the water. But the engineers produced by both plaintiff and defendants, while differing somewhat in the measurement of certain elevations, unite in saying that the natural flow from defendant's land is west or northwest across the land of plaintiff and to the territory beyond. In this they are corroborated by the decided preponderance of nonexpert evidence. As is quite frequently the case in lands which are somewhat flat, there are, or originally were, on both these farms depressions below the general surface constituting sloughs or ponds; but the drainage therefrom is naturally discharged

through a swale or water course to the west substantially as shown on the following plat:

Speaking of the course of drainage, plaintiff's engineer, after describing the two ponds or chains of sloughs on the defendants' land, says: "The water from these two chains of ponds all crosses Obe's land and flows off to the west. It is about two hundred feet where they meet on Obe's land to the west of his east line. . . . It crosses Obe's land to the west, and thence goes in a westerly direction. There is a well-defined water course. From Obe's east line to the tile on Welty's land is about one thousand two hundred and sixty feet. All the water on Welty's land drains onto Obe's land and from there to the west. No water flows naturally to the north. It all flows naturally to the west."

In argument counsel for appellee do not contend very strenuously for the correctness of the claim that the true course of drainage is to the north; but they say that even if the flow be to the west, as defendants claim, and plaintiff's estate be held to be servient to the defendants' with respect to the natural drainage, yet the effect of the ditch

of which he complains is to cast the water upon him in a different way and in larger quantities than would otherwise be the case, and that under the rule applied in *Livingston v. McDonald*, 21 Iowa, 160, and cases of that class, he is entitled to relief against such burden. Reduced to brief terms, the claim is that at the point "B" on the plat there is a ridge extending from northeast to southwest which under natural conditions would turn the water on the east and south of such ridge northward into pond "D," but that defendant, by laying a line of tile from the southeast through the ridge at "B," diverts such water into pond "C." In this manner such drainage reaches the pond or depression "E" on plaintiff's land by a shorter and more direct route than if left to pursue its natural course around the longer arc or chain. It is claimed, too, if we comprehend the record, that defendant has deepened the channel or way at point "F," thus increasing the flow from pond "D." As has already been noted, the tile of which plaintiff complains nowhere approaches his land, and the place of its discharge according to the engineers is from fifty-five to seventy rods east of his east line. As against the position of the plaintiff, defendants insist that as owners of the dominant estate they have the right to drain their lands into the water courses and depressions through which surface waters and overflows naturally escape; that the ditches complained of are wholly upon their own land and in no manner encroach upon the land of the plaintiff; and that in all they have done they are clearly within the right conferred upon every landowner by the statute. Code Supplement, section 1989-a53.

Since the decision of *Livingston v. McDonald*, 21 Iowa, 160, numerous cases involving the law of surface waters have come before this court for consideration. In many instances that precedent has been approved and followed, and in others it has been distinguished or held inapplicable. The tendency of the holdings is to recognize

neither the rule of the common law nor the rule of the civil law as being in all cases controlling to the exclusion of the other. See *Livingston v. McDonald, supra; Vannest v. Fleming*, 79 Iowa, 641; *Matteson v. Tucker*, 131 Iowa, 511, and cases there cited.

But, in the absence of any statute affecting the situation, the doctrine of the civil law has been more frequently applied in cases of drainage of agricultural lands.

1. DRAINAGE OF SURFACE WATER: damages.
As construed by the court, that rule, so far as it applies to the case before us, is that, while the owner of the dominant estate may insist on the surface waters having free flow from his lands in accordance with natural conditions and may himself interfere with such flow so far as the same is affected by the ordinary operations of good husbandry, he can not lawfully collect into a mass and discharge upon his neighbor's premises "in greatly increased or unnatural quantities to the substantial injury of the latter." The quoted phrase is from Judge Dillon's opinion in the *Livingston* case, and, accepting it as the essence of the doctrine of that oft-quoted precedent, it is undoubtedly still the law except as limited or changed by subsequent legislative action. As thus stated, it will be observed that to call the law into action for the defense of the servient estate, the collection and discharge of water thereon in other than the place of its normal flow with the land in a state of nature it must be in "greatly increased or unnatural quantities," and that the damages which will sustain a right of action for such alleged wrong must be "substantial" in character. In other words, the general doctrine which recognizes a merely technical invasion of one's premises or the infliction of a merely nominal injury as sufficient grounds for invoking the remedies of the law has here no application. To lay it down as law that no man may so ditch or drain his premises that surface water shall be discharged therefrom in any other manner or at any other place or in any other

quantities than would characterize its flow were the land left in a state of nature would be to effectively block the progress of agricultural improvement over a very large part of the state. The purpose and essence of drainage is to interfere with natural conditions as to surface water, to gather it into tiles or open ditches, and convey it to some place of discharge. If it is to be of any effect at all, the water cast from the mouth of the drain *must* be greater in quantity than would be discharged *at that point* under natural conditions. Even without a statute the rule of the adjudged cases is, as above stated, that the adjacent owner can not rightfully complain of the flow thereby cast upon him unless it be in such greatly increased or unnatural quantities as to be the cause of substantial injury to his premises. *Vannest v. Fleming,* 79 Iowa, 638; *Wharton v. Stevens,* 84 Iowa, 107; *Dorr v. Simmerson,* 127 Iowa, 551.

Recognizing, doubtless, the necessity of encouraging reasonable methods of drainage and the advisability of a statutory rule which would put an end to much wasteful litigation, the Thirtieth General Assembly enacted the provision which is embodied in Code, Supp. 1907, section 1989-a53, to the effect that: "Owners of land may drain the same in the general course of natural drainage by constructing open or covered drains discharging the same in any natural water course or into any natural depression whereby the water will be carried into some natural water course, and when such drainage is wholly upon the owner's land he shall not be liable in damages therefor to any person or persons."

2. SAME: statute: damages: evidence.

We are of the opinion that the construction of the ditch of which complaint is made in this action is fully justified under the terms of the statute, and that even under the law as it existed prior to the statute no ground for an injunction has been established. The ditch is wholly upon defendant's own land; it discharges into a natural

water course, or at the very least into a depression in his land through which the drainage reaches a natural water course. Moreover, to adopt the thought of this court in *Dorr v. Simmerson, supra,* while the opening of the ditch may have "accelerated" the flow of water which otherwise would have taken the longer route to the same ultimate point, the testimony does not clearly show that the quantity discharged through the shorter route has been unduly increased, or that plaintiff's land or crops have suffered or are likely to suffer therefrom any substantial injury to which they would not be exposed were the ditch closed up.

It follows that the decree entered by the trial court can not be sustained, and it is therefore *reversed.*