SYLVESTER MILLER, Plaintiff, Appellant, v. A. E. HESTER, Defendant.

**Drainage:** SURFACE WATER: NATURAL WATER COURSE. A land owner
1    may construct drains conducting the surface water into a natural water course on his own land, or into a depression on his own land leading into a natural water course, and if thus carried off as it would naturally have gone by reason of the slope of the ground, he is not liable in damages to the lower owner by reason thereof; and to constitute a natural water course it is not necessary that the flow of water therein be such as to wear out a channel with defined banks, but if the surface water naturally and habitually flows in a given course and within reasonable limits it is a natural water course.

**Same.** The rule that a land owner may not collect the water on his own
2    land and discharge it onto the land of a lower owner in materially greater quantities and in a different manner than it would naturally flow, does not apply to a natural depression through which the surface water flows onto the lower land; in such case he may artificially increase or hasten the flow, so long as it is not diverted from the natural course.

**Same:** STATUTES. Chapter 117 of the acts of the 33d general assembly does not limit the right of a land owner to drain his surface water into a depression or natural water course on his own land, as he is authorized to do by a former statute, but rather confers an additional right to drain across adjoining lands.

*Appeal from Jones District Court.*—HON. F. O. ELLISON, Judge.

THURSDAY, OCTOBER 22, 1914.

ACTION to enjoin the defendant from maintaining tiling on his land, the effect of which was to gather surface water from defendant's land into a swale or depression thereon, from which it passed onto plaintiff's land to the plaintiff's injury.—*Affirmed.*

*C. J. Cash* and *Herrick & Rhinehart,* for appellant.

*C. J. Lynch,* for appellee.

GAYNOR, J.—Plaintiff and defendant own land, in the same section. Plaintiff's land is immediately east of the middle line of the section, and defendant's land immediately west; the half section line being common to both tracts. Defendant's land is in the southwest quarter, and plaintiff's land in the southeast quarter. The center of the section is common to both tracts. A swale, or slough, or draw, runs through the defendant's land in an easterly direction, crossing the boundary line between plaintiff's and defendant's land, and extending into plaintiff's land a distance variously estimated by the witness from five to fifteen rods. This swale or slough is marked on either side by ridges, and the natural flow of the water is along this course towards and onto the plaintiff's land. In the spring of 1910, the defendant undertook .and did put in two lines of four-inch tiling on either side of this draw all on his premises, and conducted the water down to within about sixty feet of the line between his

land and the plaintiff's, and there discharged it again into a natural swale or depression, from which point, in the natural course of drainage, it was carried onto plaintiff's land. This depression in the swale was at the place where defendant's tile emptied. The plaintiff's land is all lower than the defendant's land, and the water flowing in this draw or slough in the natural course of drainage goes onto plaintiff's land, by reason of the natural slope of the ground, and this tile drains no other land than would naturally drain into this slough or depression. The natural and final outlet of all water that comes down this slough or swale is a creek several rods east of the half section line. It appears that, prior to this time, plaintiff had tiled his land commencing at a point somewhat east of his section line and running eastward. These tiles were evidently put in for the purpose of carrying off the water that came down the swale or slough from defendant's land. In the spring of 1911, it appears there was a very heavy rain in that section of the country, and the water came down through this swale or draw onto plaintiff's land, and washed out or filled his tile, and he claims flooded his land to some extent, and he brings this action now to enjoin the defendant from continuing the use of his tiling, and from concentrating the water on his premises by means of tiling and casting it upon the plaintiff. There was a decree dismissing plaintiff's petition, and plaintiff appeals.

The determination of this case involves the proper construction of section 1989-a53 of the Code Supplement, which reads as follows:

Owners of land may drain the same in the general course of natural drainage, by constructing open or covered drains, discharging the same into any natural water course, or into any natural depression, whereby the water will be carried into some natural water course, and when such drainage is wholly upon the owner's land, he shall not be liable in damages therefor to any person or persons or corporation.

This section has been up to this court for construction before, and the object and purpose of its enactment considered and discussed. One of the latest expressions is found in *Jontz v. Northup,* 157 Iowa, 6. The facts in that case are very similar to the facts in the case at bar, and the construction of this statute, therein recognized and approved, would seem decisive of the controversy in this case.

1. DRAINAGE: surface water: natural water course.

The evidence in this case discloses beyond a question that the general course of natural drainage on defendant's land is along this swale, extending through defendant's land into and upon plaintiff's land; that all the tiling done by the defendant was upon his own land; that he discharged the water in a natural depression upon his own land, that the water from this natural depression, by natural course of drainage, is carried to a natural water course.

As said in *Hull v. Harker,* 130 Iowa, 190:

> To constitute a natural water course, it is not necessary that the flow of water through it shall have been 'sufficient to wear out a channel or canal having definitely defined well-marked sides and banks. . . . If the surface water in fact uniformly or habitually flows off over a given course having reasonable limits as to the width, the line of its flow is, within the meaning of the law, applicable to the discharge of surface waters, a water course.'

The statute here under consideration was adopted by the Legislature in full recognition of the rules heretofore promulgated by the courts touching the rights of dominant and servient owners as to the disposition of surface water, and, no doubt, in the passage of this statute they had in mind the reclamation of low and wet land, that the same might not be lost to use, and adopted the rule therein promulgated in the interest of good husbandry and public welfare. The courts have recognized this disposition on the part of the lawmaking power, and in all cases, following the passage of this act,

have construed the statute with great liberality that the purposes for which it was enacted might be made effectual.

Since the decision of *Livingston v. McDonald,* 21 Iowa, 160, this court has been wrestling with the law of surface water. Some of the cases have approved and followed that rule, and some have not.

In *Obe v. Pattat,* 151 Iowa, 723, it was held that while the doctrine therein announced is undoubtedly still the law, except as modified or changed by subsequent legislation, ''to lay it down as law that no man may so ditch or drain his premises that surface water shall be discharged therefrom in any other manner or at any other place or in any other quantities than would characterize its flow were the land left in a state of nature would be to effectively block the progress of agricultural improvement over a large part of the state. The purpose and essence of drainage is to interfere with natural conditions as to surface water, to gather it into tiles or open ditches, and convey it to some place of discharge. If it is to be of any effect at all, the water cast from the mouth of the drain must be greater in quantity than would be discharged at that point under natural conditions.''

The statute under consideration directly authorizes the construction of open or covered drains by which, or through which, the water would be carried to some natural water course, or into any natural depression whereby the water will be carried, by the natural course of drainage, into some natural water course. But it is contended that the rule has its limitations, and even under the statute, and that, even now giving the statute its broadest construction, the dominant owner has no right to discharge the surface water from his land in such greatly increased or unnatural quantities as to be the cause of substantial injury to the servient estate.

The general rule is that the owner of the dominant estate may not, by artificial means, concentrate at one point surface

water diffused over the surface of his land, and discharge it
in a mass upon the lower land; but this rule
does not apply to natural depressions or drain-
ways through which the surface water on the higher land
drains onto the lower land. The great weight of authority
seems to be that the flow of surface water along such depres-
sions or drains may be hastened and increased by artificial
means, so long as it is not diverted from the natural course
of drainage. The very purpose of drainage is to gather the
water from the surface of the ground into a channel and dis-
charge it at some particular point. Drainage would be wholly
ineffectual in the accomplishment of its purpose if this were
not permitted.

2. SAME.

In *Dayton v. Drainage Commissioners*, 128 Ill. 271 (21
N. E. 198), the court said:

The rule undoubtedly is that the owner of a higher tract
of land has the right to have the surface water flowing or
naturally coming upon his premises by rains or melting snow
pass off through the natural drains upon or over the lower or
servient lands next adjoining, and the owner of the dominant
heritage has the right, by ditches and drains, to drain his own
land into the channels which nature has provided, even if
the quantity of water in that way thrown upon the next
adjoining lower lands is thereby increased. But the owner
of the higher lands has no right to open or remove natural
barriers and let onto such lower lands water which would
not otherwise naturally flow in that direction.

From this it would appear that the owner of the dom-
inant estate has the right to hasten, and thereby incidentally
increase, the drainage through natural depressions or drain-
ways, by the use of tiling where this is done in a proper
manner for the improvement of his own land for agricultural
purposes, and this, we think, is the rule of the statute under
consideration. As said in *Jontz v. Northup, supra:*

Such a rule is wholesome and is especially applicable to
the conditions as they exist in this state, if we are to properly

conserve our own interest and to reclaim our agricultural lands. . . . Defendant did nothing with his land save to collect the water into a channel and discharge it into a natural swale or depression, and this he had the right to do unless he substantially increased the volume of water or negligently discharged it so as to injure his neighbor. The maxim, 'Sic utere tuo ut alienum non lædas,' applies in such cases, but not to the extent of prohibiting the proper drainage of surface or percolating waters into a natural water course or depression.

In this case there is no satisfactory evidence that the plaintiff suffered any more damage from the tiling complained of than he would have suffered in the absence of tiling. As bearing upon this question, see *Hull v. Harker,* 130 Iowa, 190; *Cech v. City of Cedar Rapids,* 147 Iowa, 247; and *Obe v. Pattat, supra.*

Our attention is called to chapter 117 of the 33d General Assembly. We do not understand this statute in any way limits the right of the dominant owner as given in the section under consideration. It is only an additional remedy, to which he may resort in the event he desires to open drains across his neighbor's land for his own purposes.

3. SAME: statutes.

In the case at bar, the defendant did not desire or attempt to construct a drain across his neighbor's land. He pursued the right given him by section 1989-a53; tiled his land, gathered the waters in the tiling, discharged it upon a natural depression on his own land, sixty feet away from the land of the defendant, and therefrom it proceeded in the natural course of drainage. The swale to which he tiled was the natural outlet for all the water running through plaintiff's and defendant's premises. The water passed from the point where it was deposited, in the natural course of drainage, to a natural water course. It appears that the swale itself, without tiling, carried the water from his land onto plaintiff's and it is up to plaintiff to care for the water which thus, in the natural course of drainage, comes upon his land. To allow

plaintiff to sit back and insist upon a recognition of the rule for which he now contends would render it impossible for the dominant estate to care for the surface water, and would render the statute in question ineffectual for any purpose.

We find no error in the record, and the cause is—*Affirmed.*

LADD, C. J., and DEEMER and WITHROW, JJ., concur.