D. L. PASCAL et al., Appellants, v. PATRICK DONAHUE et al.,
Appellees.

WATERS AND WATERCOURSES: Depressions—Right to Tile—No
1  Presumption of Increased Flowage. An owner of land may tile
   his land into natural watercourses or depressions thereon (Sec.
   1989-a53, Sup. Code, 1913), and no presumption will be indulged
   that such tiling either increased the flowage on the lower estate
   or cast water thereon in any different manner than formerly.
   Such facts must be made to affirmatively appear.

WATERS AND WATERCOURSES: ''Watercourse'' Defined. If the
2  surface water in fact uniformly or habitually flows off over a
   given course having reasonable limits in width, the line of its
   flow is, within the meaning of the law applicable to the discharge
   of surface water, a ''watercourse.''

WATERS AND WATERCOURSES: Ditches—Right to Restore Nor-
3  mal Condition. A landowner may, in some cases, fill up a ditch
   on his premises to the extent of restoring the ground to its
   normal level, but if the landowner had such right, he was fully
   protected when the decree granted him the right to maintain
   his existing embankment provided he maintained the proper out-
   let through the same.

*Appeal from Clinton District Court.*—HON. A. P. BARKER,
Judge.

FRIDAY, MAY 14, 1915.

SUIT to enjoin interference with the plaintiffs' fences,

roadway or embankment. On hearing, the petition was dismissed. Plaintiffs appeal.—*Affirmed.*

*Ellis & McCoy* and *Pascal & Pascal,* for appellants.

*Wolfe & Wolfe,* for appellees.

Ladd, J.—Plaintiffs are owners of the S. E. ¼ S. W. ¼ of section 9, and also the W. ¼ of that section, and the E. ¼ of section 8. The defendants own the N. E. ¼ S. W. ¼ and. the W. ½ S. E. ¼ of section 9, and the N. W. ¼ N. E. ¼ of section 16, and the E. 20 acres of the N. E. ¼ N. W. ¼ of that section. The natural drainage from quite a large body of land from the north is over the N. E. ¼ S. W. ¼ of section 9, and through a swale extending therefrom to an artificial ditch in the forty below, that is, the S. E. ¼ of the S. W. ¼ of said section, belonging to plaintiffs. This ditch extends from Clear Creek north to within three or four rods of the division line between the forties. The owner of the land below excavated the ditch from the creek to the south line of plaintiffs' forty, and their father from thereon north. This was done in 1884, and the ditch has been maintained since that time. From the upper end of the ditch, north several rods into the defendants' forty, defendants contend that there is a natural swale or depression variously estimated to be from ten inches to two feet in depth and several feet in width; while plaintiffs claim that this is merely the low center of a swale fifteen or twenty rods wide, and was sodded all the way.

The weight of the evidence is to the effect that there was a natural depression through which the water passed over into the artificial ditch, but that the bottom was covered by grass until tile drains were laid in defendants' land in 1909, after which it was gradually removed by the action of the water and because of the turning of a furrow from near the mouth of the tile drain to the division line.

1. Waters and Water-courses : depressions : right to tile : no presumption of increased flowage.

About eight hundred rods of tile were laid in defendants' forty acres, with three branches flowing into this swale, one six-inch tile from the north and a five-inch tile from each side. No surface water was drained through the ditch which did not have for its natural outlet the swale running therein, and the tile openings were at the surface.

The record is without any evidence that these tile drains gathered more water or threw it on the plaintiffs' land differently than before these were laid, and such an inference cannot be supplied by theories. *Plagge v. Mensing,* 126 Iowa 737. The furrow may have tended to collect the water and have increased the erosion. At any rate, at the time suit was instituted, we are satisfied that there had become a sort of a mudhole or cattle wallow north of the line, and that a well-defined waterway had been cut from there south emptying into the artificial ditch. Thereafter, plaintiffs could not well cross with their machinery, and they constructed a dam or roadway south of the division line and parallel therewith, about ninety feet long by twelve or fourteen feet wide, with plank along the south side, with spillway, and a seven-inch tile through it. The tile was so placed that it did not carry off the water, and the effect of the dam was to hold the water back on defendants' land at least to the top of the tiles; whereas, prior thereto, the water had passed from the tile drains down through the artificial ditch in plaintiffs' land.

These are but conclusions with reference to the facts upon an examination of the record, and we shall now take up the questions raised by appellants.

I. Was there a natural depression or ditch from defendants' line to the artificial ditch in plaintiffs' land, or was the connecting ditch caused by the acts of plaintiffs? This inquiry has already been disposed of. We are

2. WATERS AND
WATER-
COURSES :
"watercourse"
defined.

satisfied that there had been a natural depression easily to be identified, indicating the natural flow of the water from defendants' land to the head of the artificial ditch since the excavation of the

latter; but that since the laying of the tile, either owing to that or the furrow or the making of the cattle wallow, a defined waterway had been cut through the sod at the bottom of such depression. There was a regular watercourse prior to the laying of the tile (*Jontz v. Northrup,* 157 Iowa 6), and the effect produced by the subsequent erosion of the waters did not render it other than that. Under Sec. 1989-a53, Code Supplement, defendants had the right to empty their tile outlets into this watercourse. *Miller v. Hester,* 167 Iowa 180; *Obe v. Pattat,* 151 Iowa 723, 727; *Dorr v. Simmerson,* 127 Iowa 551; *Parizek v. Hinek,* 144 Iowa 563.

The right so to do is so clearly vindicated by these authorities that nothing need be added even to show that counsels' suggestion, that tiling along a watercourse alone is contemplated by the above statute, is without foundation.

II. The second inquiry is whether, such a ditch having been washed out, the plaintiffs were authorized to restore the earth and raise the ground to its natural surface. Doubtless this may be done in a proper case in the interest of good husbandry. See *Horton v. Sullivan,* 56 N. W. (Mich.) 552. Such was not the purpose in the case at bar; but even if it were, the decree fully protects the plaintiffs by ordering that "If they desire to maintain an embankment or roadway across the ditch or swale at the place in question, may do so, provided they lay tile of sufficient size in the proper place, and so placed as to carry off the water, and permit it to flow, as it did prior to the time of the construction of the embankment in controversy, and they are also to keep said tile open and free for the passage of the water," and that if they do not, within forty days the embankment be removed. There is no evidence as to the extent of the cut since the laying of the tile, and therefore the court was warranted in assuming that this was not an appreciable amount more than that which would naturally occur,

3. WATERS AND WATER-COURSES: ditches: right to restore normal condition.

and the effect of the decree is to restore the waterway to its normal condition.

Appellants' third proposition has been disposed of in saying that there was no proof of an increased flow of water in consequence of the laying of the tile.—*Affirmed.*

DEEMER, C. J., GAYNOR and SALINGER, JJ., concur.