CHARLES F. THOMAS, Appellant, v. THE CITY OF GRINNELL
et al., Appellees.

WATERS AND WATERCOURSES: Diversion of Waters—Extent of
1 Right. Diversion of waters from their natural flow without
*substantial* injury to the lower proprietors is lawful.

PRINCIPLE APPLIED: Half the surface of a city drained
naturally to the southeast, in which territory had been constructed
a sewer, particularly for storm water but to an extent for sani-
tary purposes. This sewer led naturally into a creek farther to
the southeast. West of this territory was a water shed and the
territory of the city to the west of the water shed drained natur-
ally to the southwest. The city proposed to build a new sanitary
sewer running to the southwest through the water shed and car-
rying all the aforementioned and other sewage into a disposal
plant, from which, after purification, it would pass into a creek
farther to the southwest. A property owner along the last creek
questioned the right of the city to so do. *Held,* the project would
not be enjoined, it not appearing that the incidental diversion of
surface and percolating water would substantially injure anyone.

MUNICIPAL CORPORATIONS: Sewerage System—Apprehended
2 Nuisance—Action to Enjoin—Proof Required. Self-evidently
there is a marked difference between (a) an action to enjoin an
act which has happened and the results of which, being known,
are subject to more or less definite conclusion, and (b) an action
to enjoin that which has not happened and the results of which,
being unknown, are conjectural, problematical, speculative. In
the latter case, the court must not be asked to assume or presume
a nuisance *per se.* Proof! Proof! is the demand of the law. So
held and applied in the case of the proposed enjoining of the
establishment of a city sewage disposal plant.

CONSTITUTIONAL LAW: Division of Powers—Legislative Act—
3 Necessity for—Non-review by Courts. Courts will not assume to
pass upon the necessity for a legislative act. So held in regard to
the action of a municipality in establishing a sewage disposal
plant.

*Appeal from Poweshiek District Court.*—HON. JOHN F. TAL-
BOTT, and HON. K. E. WILLCOCKSON, Judges.

MONDAY, JUNE 21, 1915.

REHEARING DENIED SATURDAY, OCTOBER 2, 1915.

ACTION in equity for a decree restraining the city of Grinnell, its mayor and council, from constructing or installing certain changes in its sewer system and from letting any contract therefor, or in any other manner authorizing such work. A motion to dissolve the temporary injunction was heard before Judge Talbott and sustained, from which ruling an appeal was taken. Later, the cause was tried on the merits before Judge Willcockson. There was a decree dismissing the petition, from which ruling an appeal was also taken. The two appeals have been consolidated and heard together. The material facts are stated in the opinion.— *Affirmed.*

*C. H. Van Law,* for appellant.

*H. L. Beyer, J. H. Patton* and *W. C. Rayburn,* for appellees.

WEAVER, J.—The topography of the site occupied by the city of Grinnell is such that something more than one-half its surface drains naturally to the east or southeast. Fifteen or more years prior to the council proceedings now in controversy, the city constructed a system of sewers covering something more than one half its area on the east. It would seem to have been constructed more particularly as a means of storm sewerage, but has been subjected in many instances to use for sanitary purposes. The lateral lines of the system radiated through many of the streets in the eastern and central portions of the platted part of the city and discharged into a trunk sewer in the southern part of this area, whence it was carried to the southeast along a natural line of drainage to what is known as Little Bear Creek. In the year 1914, the city council inaugurated proceedings which contemplated a new trunk sewer at a depth and grade which

would carry its flow to the southwest to a disposal plant to be provided for that purpose at or near a stream known as Sugar Creek. Into this new trunk sewer, it was proposed to lead all the flow from the original system above described, as well as from the remainder of the city territory theretofore not supplied with sewer accommodations. The enlarged system was to be used as a sanitary sewer. The plan also contemplated a disposal plant, which was to receive the discharge from the trunk sewer and, by chemical and other treatment, deprive it of its impurities and turn the remainder in an innocuous and inoffensive condition into Sugar creek. The proceedings in council were conducted, so far as appears, with statutory regularity, and the scheme of improvement having been adopted by appropriate resolutions, the mayor and council were about to let the contract, when this action was begun.

The plaintiff states the history of the proposed improvement substantially as we have above recited it, and further says that he is the owner of considerable farm land along or near the course of Sugar creek between the proposed disposal plant and the place where the creek empties into the Skunk river, and, as grounds for his demand for equitable relief, says:

1. That a sewer system of the kind and construction here proposed not only serves to carry off the unclean accumulation of sewage and the large amount of water thrown therein for the purpose of flushing the laterals and mains, but it also operates as a means of ordinary drainage, whereby the surface waters of the city's area and the seeping and percolating waters of the soil enter the sewer pipes at their joints and are discharged at the outlet. The effect of this, in the present case, he says, is to collect the ordinary drainage from all that part of the city which naturally discharges to the east and southeast and cast it on the other side of the watershed into Sugar creek, thereby unnaturally increasing the quantity of water flowing through that stream, to the damage and injury of the land owned by him and others in that neighborhood.

2. Plaintiff further says that the city of Grinnell is already adequately supplied with sewer conveniences, and there is no reasonable necessity or demand for the proposed improvement.

3. Also that, in the present natural conditions of Sugar creek and the valley through which it flows, the stream, with certain springs found along its course, supplies good and wholesome water for the use of the livestock of the adjacent landowners, and is an item of great convenience and value to them, all of which will be injuriously affected or destroyed by the diversion of the flow of the city sewers into the proposed new outlet.

Other matters of complaint are stated in the petition, but are not urged upon this appeal.

Reduced to brief terms, the argument for appellant is: First, that the effect of the change in the sewer system is to cast upon his land the burden of receiving drainage water from lands the natural drainage of which is in another direction; and second, that, if constructed, the effect of the sewer system will be to create a nuisance to his injury by corrupting the waters of the stream. Stated in still briefer terms, the objection raised is, first, to the quantity of the flow from the sewer, and second, to its quality.

I. The first of these objections is the one on which principal stress is laid in argument. The leading authority, upon which much reliance is placed by counsel, is the decision of this court in *Livingston v. McDonald*, 21 Iowa 160. The central principle there affirmed is of undoubted soundness, but, as we have had frequent occasion to point out, it does not go to the extent which is sometimes claimed for it. It is not there decided that every diversion of water from its natural flow upon or away from the land of another is actionable, and still less does it hold that equity will always interfere to prevent such diversion. What it does hold is that such diversion cannot be rightfully made "to the substantial

1. WATERS AND WATERCOURSES: diversion of waters: extent of right.

injury" of the lower proprietor. See page 172 of the cited volume. Referring to the quoted phrase from that opinion, we have said (*Obc v. Pattat*, 151 Iowa 723-727) that, under this rule, "to call the law into action for the defense of the servient estate, the collection and discharge of water thereon in other than the place of its normal flow in a state of nature must be in 'greatly increased or unnatural quantities' and that the damage therefrom must be 'substantial' in character. In other words, the general doctrine which recognizes a merely technical invasion of one's premises or the infliction of a merely nominal injury as sufficient grounds for invoking the remedies of the law has here no application." See also *Martin v. Schwertley*, 155 Iowa 347, 351.

An examination of this record convinces us that plaintiff fails to show with any reasonable certainty that the drainage from the city, which is merely an incident to the construction of a sewer system constructed for an altogether different purpose, will increase the flow of Sugar creek in a manner to materially injure the lower riparian proprietors. The preponderance of evidence given by engineers and experts who have examined the premises and computed both the probable flow and the capacity of the creek is to the effect that such increase will not swell the volume of water to an extent liable to injure adjacent lands. It is unnecessary to go into a recitation of the figures and estimates given by the engineers and others. It is enough to say that the showing of anticipated injury is not so clear or certain that we can interfere in advance and place our veto upon a proposed municipal improvement which may be of great, if not vital, importance to the convenience, comfort and health of a large community, which is willing to assume the burden of its construction and maintenance, and to guard its operation in a manner to prevent its becoming a nuisance to others. Men of great learning and wide experience, who have familiarized themselves with the subject, express the view that the incidental drainage of surface and percolating waters will

not be enough to create a burden upon the plaintiff or his property. Manifestly, any estimate which can be made of the amount is largely speculative and affords a very unsubstantial basis on which to nullify the act of a city acting within the scope of its express statutory authority.

II. Can this court assume in advance or find from the evidence that the city will neglect or may not be able to install a disposal plant which will effectually remove the unclean elements from the sewage and purify the water which it discharges into the creek? Undoubtedly, it has no right, nor is it within the power of this court to give it a right, to cast filth or other poisonous substances into the stream, injuring its quality for ordinary uses. But what appellant asks us to do is to hold that he has proved that such is the purpose of the defendants, or at least that such will be the natural or necessary result if they are permitted to proceed with the improvement. Such a ruling would be arbitrary in the extreme. It is a matter of common knowledge to the civilized world that competent men have long been laboring to bring about a successful method by which sewage may be disposed of in a sanitary manner without befouling our lakes and streams. We know also that many plants of that kind have been and are being established in these western states where the need of such relief has been acute. In many instances, they are reputed to work satisfactorily. None of the experts testifying in this case deny the practicability of devices of this nature, and as a whole their opinions appear to justify the venture by the defendant city. The most serious criticism offered is that of one engineer who doubts whether the capacity of the filter beds is adequate, a fault which, if found to exist, ought to be remedied without condemning the whole system. The court cannot be supposed to have any technical information upon these subjects upon which it can reject the testimony and declare that the opinion of all these experts is worthless and that, if a disposal plant is built accord-

2. MUNICIPAL CORPORATIONS: sewerage system: apprehended nuisance: action to enjoin: proof required.

ing to the best approved methods, it will prove a nuisance *per se*. And while conceding that the dumping of large quantities of filth into a stream may create a nuisance which the courts would enjoin in advance of the wrongful act if threatened, we are not yet prepared to say, as a matter of law, that a sewage disposal plant may not be so constructed and carried on as not to be a source of annoyance or injury to anyone. The ultimate risk is upon the city. As we have already intimated, this decision does not clothe the city with immunity against liability if it shall in fact create a nuisance to the injury of others. The general rule is that no injunction will be decreed except upon a clear showing of injury, and the court must in each instance act with full conviction of its urgent necessity. 1 High on Injunctions, 4th Ed., Sec. 22.

It must clearly appear, not only that the defendants are about to do the act alleged in the petition, but also that such act will be attended with the apprehended injurious consequences. In Kerr on Injunctions, (5th Ed.) 157, it is said, ''The court will not in general interfere until an actual nuisance has been committed; but it may by virtue of its jurisdiction to restrain acts which, when completed, will result in a ground of action, interfere before any actual nuisance has been committed, where it is satisfied that the act complained of will inevitably result in a nuisance.'' That a sewer system with a proper disposal plant upon the bank of a stream is not a nuisance *per se* has already been held by this court in *Hollenbeck v. City of Marion*, 116 Iowa 69, 77, where it is said, ''It may be that the sewer system was permanent in character; but it does not follow that its use will always be such as to constitute a nuisance. It is well known that modern scientific research has discovered means of disinfecting and deodorizing sewage, so that it is practically innocuous.'' It has also been repeatedly decided that if a business may be so conducted as not to be a nuisance or a given act can be done without material injury to another, it will not be enjoined simply be-

cause the person asking it fears that a nuisance *may* result. *Shiras v. Olinger*, 50 Iowa 571; *Faucher v. Grass*, 60 Iowa 505. See also *McLaughlin v. Sandusky* (Neb.) 22 N. W. 241.

In the *Shiras Case, supra,* plaintiff sought to enjoin the use of a building as a livery stable in close proximity to his residence, and it was there said, "Inasmuch as a livery stable is not a nuisance *per se,* and it is not impossible that a change may be introduced which would obviate all objections, we think the decree (of the district court) enjoining the use absolutely went too far." In the *Faucher Case,* the subject of controversy was a blacksmith shop, and we said, "If a house or shop may be so constructed upon the lot wherein the business of blacksmithing may be carried on in such a manner as to cause no annoyance or injury to plaintiff, it ought not to be regarded as forbidden. . . . Equity will not restrain further use of the lot for a smith's shop, if it may be used without proving to be a nuisance."

Applying the same principle to the case at bar, we repeat what we have already in substance expressed, that the evidence in the record is insufficient to demonstrate with any degree of certainty that the sewer system, if made and completed according to the proposed plan, will prove a nuisance; and the court is, therefore, not justified in condemning it in advance and enjoining its construction.

III. Considerable is said in argument to the effect that there is no reasonable necessity for the improvement and that the present system is, or can be made, sufficient for the needs of the city and its inhabitants. This is not a question we are authorized to consider. The finding of the necessity and propriety of such improvements is committed by the statute to the city itself, acting through its mayor and city council. The authority so given is legislative in character, and if the proceedings have been conducted in accordance with statute, the finding by the council that a work of public improvement is necessary or expedient, and

3. CONSTITUTIONAL LAW: division of powers: legislative act: necessity for: non-review by courts.

its action in ordering the work of construction to proceed, are not subject to judicial review or control. It may be said, however, that the record demonstrates that, owing to its differences of level, the entire city of Grinnell cannot be served by a single sewer system carrying its flow to the east or southeast, while with the proposed changes in the system, it can all be carried to a common outlet at the southwest. Under such circumstances, the finding that it was desirable to have the entire flow discharged at a single outlet and cared for in one disposal plant instead of two is apparently not unreasonable. It is well within the scope of the power conferred upon the city, and the regularity of the proceedings is not challenged.

It follows of necessity that the decree of the district court must be and it is—*Affirmed.*

DEEMER, C. J., EVANS and PRESTON, JJ., concur.