RUTH BRIGHTMAN, Appellee, v. F. G. HETZEL et al., Appellants.

HIGHWAYS: Construction, Etc.—Caring for Diverted Drainage.
1 One who materially diverts the natural course of drainage acquires no rights against the *public,* howsoever long the diversion may be continued. In other words, one may not divert the natural course of drainage and thereby cast the waters into a public highway, and then compel the public authorities to so take care of such diverted waters that the one diverting will not be injured.

PRINCIPLE APPLIED: A landowner owned a quarter section of land, and also an 80 immediately to the east of the quarter. A fringe of hills bordered his land on the west and north.

Natural drainage would carry the surface waters across the northeast corner of his quarter, and thence east and south across his 80 and other lands to a river, something like a mile to the east. At the point where the natural drainage reached his east 80, he threw up a bank, in order to deflect the water to the south. He then dug a ditch straight south, to an east and west highway which ran along the south side of his said quarter, which road had been established many years previously. The water, from the point where it reached this highway, spread out promiscuously over the highway and the land to the south. For at least 16 years he enjoyed this artificial drainage. The road was not graded, and some small culverts were placed therein, and the waters were thus divided between the north and south sides of the highway. After some 16 years, the public authorities graded the highway, and placed therein, about opposite the mouth of the artificial ditch, a two-foot tile. The landowner claimed that this tile was too small, and that the grade and inadequate tile backed the water upon his land. He sought to enjoin the maintenance of the grade, or, as alternative relief, to compel the installation of larger tile in the grade.

*Held*, the artificial ditch had not ripened into a *natural* watercourse, as far as the *public* was concerned, and that he had acquired no right therein against the *public*.

WATERS AND WATERCOURSES: Surface Waters—Artificial
2 Courses—Rights of Public. *Artificial* ditches which materially divert the course of natural drainage do not, by any lapse of time, become *natural* watercourses, as far as the *public* is concerned.

PRINCIPLE APPLIED: See No. 1.

LIMITATION OF ACTIONS: Nature, Etc.—Public Rights. Principle recognized that the statute of limitations does not run,
3 nor may prescriptive rights be claimed, against the *public*.

PRINCIPLE APPLIED: See No. 1.

*Appeal from Pottawattamie District Court.*—THOMAS AR·
THUR, Judge.

APRIL 4, 1918.

ACTION to enjoin the defendants, board of supervisors and other public officials, from constructing a grade upon a highway obstructing the flow of surface water gathered

into a ditch and discharged upon the public highway. De-
cree for the plaintiff in the court below.—*Reversed and re-
manded.*

*Preston & Dillinger,* for appellants.

*Turner & Cullison,* appellee.

GAYNOR, J.—The plaintiff is the owner of the north-
west quarter and the south half of the northeast quarter of
Section 31. Intervenor Swartfagger owns the southwest
quarter and the west half of the southeast
quarter of Section 31. Intervenor Emmert
owns the east half of the southeast quarter
of Section 31. One Christianson owns the
north half of the northeast quarter of Section 31. Inter-
venor Barton owns the west half of the southwest quarter
of Section 32, and other lands east of this. A highway
runs east and west along the south line of plaintiff's land.
Another highway intersects this east and west highway
at the center of Section 31, and runs thence southward.
There is also a highway running along the east side of
Section 31. A river known as the Nishnabotna runs
through Section 32, a little to the west of the center line
of that section. All the land involved in this suit lies
in or adjacent to the river bottom, except the westerly
part of Section 31, where the ground rises quite abruptly
towards the north and west. The lands north, west, and
northwest of plaintiff's west quarter are high and
somewhat broken, and the same is true of the land
west of the Swartfagger west 40. The natural slope of this
land is towards the south and east from plaintiff's west
quarter, and from the northeast corner of the east 80. It
appears that, at the time of the trial, a ditch ran from the
hills north of plaintiff's quarter section southeast across
the northeast corner of the quarter to a point near the
northwest corner of plaintiff's east 80. There the ditch

1. HIGHWAYS:
   construction,
   etc.: caring for
   diverted drain-
   age.

makes a bend, and runs thence south near the west line of
the east 80, and empties the water so gathered in the ditch
upon the public highway heretofore mentioned, near the cen-
ter of the section.   At the point where the ditch turns, near
the northwest corner of plaintiff's east 80, a dike or bank
of dirt had been thrown up, about two feet high above the
surface of the ground, and willows had been planted there
to force the water south along the west line of this 80.
This ditch varies in width and depth as it courses through
plaintiff's land.   North of the north line of plaintiff's quar-
ter, this ditch was very large, in some places 35 feet wide
at the top and about 12 feet deep, and drains the surface
water from a large tract of land.   The highway heretofore
mentioned, running through the center of Section 31 and
just south of plaintiff's land, was established somewhere
about 1870.   This ditch, from the northwest corner of plain-
tiff's east 80 to the highway, runs reasonably straight, and
reaches the highway at the center of the section.   The build-
ing of the dike at the northwest corner of plaintiff's east 80
forced the water to the south, and, with the aid. of slight
excavations, the water wore the ditch south to a point where
it reaches the highway by natural processes.   Until the wa-
ter was forced by the building of the dike at the northwest
corner of plaintiff's east 80, and the putting in of willows
there to force the surface water southward, there was no
ditch along the west line of plaintiff's east 80.   For some
years after this ditch had been formed, and the surface
water from the land to the north and northwest had worked
its way through to the highway, there was an opening in
the highway, a bridge or something of that sort, or a cul-
vert, to allow the water to pass through the highway.
Later, the highway became impassable, and the highway
east and west along the south line of plaintiff's land was
graded up, and a culvert put in—a 24-inch culvert.   This
culvert was intended to aid in carrying the water to the

south side of this highway, thus equalizing the burden of the water between the ditch on the north and a ditch on the south of the highway. It appears that the county had constructed ditches both on the north and the south of the highway; for the purpose of carrying the waters eastward that came from the lands north of the highway, and, as we take it, to the Nishnabotna River, or to some natural receptacle for water to the east. The ditch in question had been there for 20 or 25 years prior to 1911. In 1911, the county, through its board of supervisors or proper officers of the county, graded this highway at this point, and cut large ditches on the north and south side of it for the purpose of conducting the water eastward that came from the north, and so made this culvert in the highway, after it had been graded up. This culvert is a 24-inch culvert.

The claim of the plaintiff is that this culvert is insufficient to carry the water that comes through her ditch to the grade, and the grade tends to cast it back upon plaintiff's land, to her injury. She claims that this ditch has become a natural watercourse; that she has acquired the right to discharge, and the board has no right to obstruct the flow of the water in this natural watercourse to her prejudice.

This action was brought originally against the trustees and road supervisor of Knox Township. Such proceedings were had thereafter that the board of supervisors of Pottawattamie County were made defendants, together with the original defendant.

The claim of the plaintiff in this suit is that she has acquired a right to discharge the surface water accumulating in the ditch upon the public highway at this point; that the ditch has become a natural watercourse; and that the board of supervisors has no right to obstruct the flow of water in this watercourse to her prejudice.

The allegation of her pleading is that this is a natural

watercourse, with well-defined banks from 8 to 12 feet wide, and from 3 to 5 feet deep, running through and across plaintiff's land, and crossing said highway at or near the center of the section; that the stream drains about 2,000 acres of land north and west of said highway; that the defendants have removed a culvert or bridge in said highway at a point where the aforesaid stream crosses said highway, about 12 or 14 feet long, which was ample and sufficient to permit the water from said stream to flow unobstructedly across the highway in said culvert or bridge; that said defendants filled up the channel of said stream under the grade, except a circular opening of about 24 inches in diameter; and that said opening is wholly insufficient to carry the water in said stream across said highway, and by reason thereof, the water in said stream is obstructed, and the water prevented from flowing over and across the highway, and caused to accumulate and stand upon plaintiff's land, to her great and irreparable injury.

The prayer of the petition is that, unless the grade of said highway be lowered sufficiently to allow the surface water flowing over said land to pass unobstructed over said highway, and unless the filling up of the watercourse, as above alleged, be removed from said stream of water at the point where it crosses the highway, or unless a sufficient number of bridges and culverts be placed in said highway to permit the surface waters and the water of said stream to pass over and across said highway, this plaintiff will suffer irreparable injury, as aforesaid. Wherefore, she prays that the defendants be required to lower the grade of the highway so as to permit such water to flow over and across the highway unobstructed, or that they be required to remove the obstruction placed in said stream where the same crosses the highway, so as to permit the water to flow freely over the highway, or that it be required to place culverts in the highway in such a number and of sufficient size

to permit the surface water flowing off said plaintiff's land and the water in said stream to pass unobstructed over and across the highway.

On the hearing in the district court, a mandatory injunction was issued, requiring the board of supervisors to construct an opening in the highway at the point where the ditch comes from plaintiff's land near the center of Section 31, the opening to be not less than four feet in diameter. Denied all other relief. The defendant board of supervisors and intervenors appeal.

The history of this ditch along the west line of plaintiff's east 80 in question seems to be about this: In the early days, there was a ditch coming from the north of plaintiff's land running through the northeast corner of plaintiff's quarter, continuing its course southeast until it struck the east line of the quarter. The owner of the northeast quarter threw up a dike across the swale at that point, driving in willows and throwing up dirt to make an embankment there, and dug another ditch from this original ditch or swale south to the northwest corner of plaintiff's east 80, and continued the ditch from that point due east along what is now the Christianson 80 and the plaintiff's east 80 to the east road. This ditch was dug with a spade. This ditch was kept open for a number of years. During this time, there was no ditch such as is now in existence along the west line of plaintiff's east 80. Between 1893 and 1895, this ditch was dug from the northwest corner of the plaintiff's east 80 to the south line, or to a point at the center of Section 31 on the highway. This ditch was started by plowing and scraping. The work continued on it for three or four years. A dike along the east bank of the ditch was thrown up when the ditch was dug, and was piled higher as the years went on. By the action of the water, the ditch in question became deeper and wider, until a large ditch, carrying a considerable volume of water

and discharging it at the center of Section 31 onto the high-
way, was made. The highway on the south side of plain-
tiff's land was located in 1870. It was never graded until
1911. Prior to its grading, the water spread all over the
road near the center of Section 31. When the road was first
opened, there was no bridge or culvert in the road. Subse-
quently, however, and before 1911, there were passageways
for water made in the road by the use of culverts. These .
were placed there to cover the low ground and permit the
discharge of surface water. There was no ditch in this
road, as we take it, or across this road, until after the
ditches were constructed along the west line of plaintiff's
80, throwing surface water onto the highway at that point.
Since then, however, ditches have been constructed on the
north and south sides of this east and west highway along
the south line of plaintiff's land from the center of Section
31, east. These ditches were constructed by the proper au- .
thorities, we assume, for the purposes of carrying water
that came from the north of this highway eastward to some
point where it could be discharged into a natural depres-
sion, or natural watercourse. After the grade was made
in the road, it was found that it was necessary, in order to
carry the water from the north of the road properly to the
discharging point, that some opening be made in the road,
so that the ditches on each side of the road could be utilized
for this purpose, and this 24-inch culvert was put in just be-
low the discharge point of the ditch in question. It was
put in a little higher than the bottom of the ditch, so that,
when the water in the north ditch rose to a certain point,
it could be discharged under the grade to the ditch on the
south side of the road. Plaintiff's complaint is that this
culvert is insufficient for that purpose.

We are not favored with any argument for the plaintiff
in this case, and it is somewhat difficult to understand ex-
actly the point upon which plaintiff relies to sustain the ac-

tion of the court.   It is apparent from this record that the
natural flow of the surface water from a large area north
of this road had been diverted from its natural course, and
brought, by the action of the plaintiff, through this ditch
to the center of Section 31, and there discharged upon the
public highway.   There is no evidence in this record to show
that this ditch had any well-defined banks or natural chan-
nel south of the point where it reached this road; and, so
far as we can gather from the record, after it passed out of
this ditch and over the road, it was cast upon the lands to
the south at this point.   It appears, however, that Swart-
fagger dug a ditch on the north side of his east 80 east
ward for the purpose of receiving this water and carrying
it to the east, and this is the ditch, or one of the ditches,
to which we refer, on the south side of the highway that runs
south of plaintiff's land.

It seems to be the claim of plaintiff that, having pro-
cured this ditch, in the manner hereinbefore indicated, along
the west line of her east 80, she had become entitled to have
the flow of the surface water that accumulated therein dis-
charged without obstruction from her land over the high-
way and onto the land south.   Swartfagger is one of the
intervenors herein, and is resisting plaintiff's claim.   There
was no showing in this record that this grade in the high-
way would interfere with the flow of the surface water
from plaintiff's land, if that surface water were permitted
to gather and flow over the surface of the land in its nat-
ural channels.   Plaintiff has, by means of this ditch, not
only discharged the water from her lands at this point upon
the public highway, but has collected the surface water
from a large area both north and west of her land, and
discharged it at this point in a different manner and in
larger quantities than it could come in the course of nature.
Her purpose in this suit is to compel the county to care for
the water so gathered by her and so discharged upon the pub-

lic highway. This is not a natural watercourse. It amounts to no more than an open drain upon her land, in which she has gathered surface waters from her land and discharged them at a point other than the one at which they would have been discharged in the natural course of drainage. All the drainage south of this ditch is artificial. The ditches dug by the defendants along the north and south sides of the road, and by Swartfagger on his own land, are defensive ditches, dug and placed there for the purpose of protecting the servient estate from great damage from the manner pursued by the plaintiff in the accumulation and discharge of her surface water.

Upon the fact issue, the equities are not with the plaintiff. Two propositions are involved in the determination of this suit:

2. WATERS AND WATERCOURSES: surface waters: artificial courses: rights of public.

1. Is the ditch a natural watercourse, in which the flow of water must not be obstructed by the servient owner to the prejudice of the dominant owner?

2. Has the plaintiff, by long user and lapse of time acquired a right to discharge the water at this point, to the prejudice of the lower estates?

These two questions may be answered together. The servient estates below the highway, to the south of the highway, have, up to this point, without complaint, managed to divert the water from their lands by ditches running to the east to the Nishnabotna River. The board of supervisors, acting for the public, has endeavored to protect their property, the highway, by the same means. No complaint has been made by the servient estates up to the commencement of this trial. The efforts made to protect the servient estate against the surface waters gathered in this ditch and discharged upon the lower lands, seem to have been fairly successful. No complaint was made until this trial was begun. The water through these ditches was carried along

the north and the south side of the highway to this river.

We had occasion to review this question somewhat in *Falcon v. Boyer,* 157 Iowa 745, and from a review of the authorities,—many of which are cited in that case,—we have reached the conclusion that plaintiff has no rights here based upon the claim that this is a natural watercourse. The rule that an artificial ditch may, under some circumstances, become a natural watercourse by the lapse of time, as between private individuals, does not apply when the rights of the public are involved; for neither the statute of limitations nor prescriptive right can be urged or claimed against the public.

In *City of Waterloo v. Union Mill Co.,* 72 Iowa 437, the doctrine was recognized that the statute of limitations will not run to defeat the exercise of governmental powers.

3. LIMITATION OF ACTIONS: nature, etc.: public rights.

It rests upon the doctrine that individuals may be held to a time limit in the enforcement of their rights against adverse claimants. This is because they have sufficient interest to make them vigilant. But in public rights, each individual feels but slight interest, and would rather tolerate even a manifest encroachment than to seek a dispute to set it right. The people do not act in a body. The agents of the government, experience shows, do not manifest the same degree of diligence in detecting and protecting public rights that individuals evince in the protection of their own rights. Some courts hold that the statute of limitations cannot be invoked to deprive the people of their right in public easements. A public easement belongs to the public, and all individuals are charged with knowledge of this fact. Any encroachment upon the public right is a wrong at the very beginning, and continues a wrong, and can form no basis for an estoppel against the public. See *Taraldson v. Town of Lime Springs,* 92 Iowa 187; *Chicago, R. I. & P. R. Co. v. City of Council Bluffs,* 109 Iowa 425;

*Dickinson County v. Fouse,* 112 Iowa 21; *Biglow v. Ritter,* 131 Iowa 213; *Quinn v. Baage,* 138 Iowa 426. In this last case, it is said:

"Though the authorities are in conflict on the question (to wit, the statute of limitations), this court is committed to the doctrine that, in establishing and maintaining a highway, a municipality exercises governmental functions, and for this reason the statute of limitations does not run against it with respect to encroachment therein."

It follows that, if title to a highway cannot be acquired by adverse possession against the people, the right to destroy or interfere with the free use of the easement cannot be acquired by prescription. Manifestly, then, the plaintiff, by collecting the surface water on her land into a ditch, and discharging it at one point in a different manner and in greater volume upon the public highway than it would come in the course of nature, does not acquire such right by the lapse of time. The right of the plaintiff to insist that the board of supervisors take some action to protect her against the evil consequences that flow from her own act, must rest upon the thought that she has acquired a right to discharge the surface waters from her land in this way upon the public highway, against which the public has no right now to protect itself.

As we have said before, the statute of limitations does not run against the exercise of governmental powers. That the improving, draining, and grading of public highways constitute the exercise of that power, see Elliott on Roads and Streets (2d Ed.), Section 883, where it is said:

"The doctrine that highways cannot be lost by adverse possession is supported by other well-settled principles of the law. There can be no rightful permanent private possession of a public street. * * * It would be a grave reproach to the law to permit a wrongdoer * * * to take advantage of his own wrong and that of the municipality,

and by such indirect and wrongful means obtain a right to the street which the corporation is prohibited from directly granting or destroying.   *   *   *   'Individuals may reasonably be held to a limited period to enforce their rights against adverse occupants, because they have interest sufficient to make them vigilant.   But in public rights of property, each individual feels but a slight interest, and rather tolerates even a manifest encroachment than seeks a dispute to set it right.'   The rule best supported by reason and by the weight of authority is that the 'common right of highway' cannot be lost by the attempted adverse possession of a private individual."

The evidence shows, without any serious conflict, that, in the early days, great volumes of water, covering a large territory northwest of plaintiff's land, passed through a natural swale, and spread out over a large territory of land, and flowed to the east, finally finding its way to the river. To prevent this water from flowing in its natural course, this ditch was constructed, and it was brought to this point in the highway by artificial means; and it is this diverted water, accumulated at this point, that she now claims is flooded back by the defendants upon her land; and it is this water, so diverted by this artificial ditch, that the plaintiff now seeks to compel the highway officials to take care of and protect her against.   This cannot be done.

Many questions are argued, involving motions and demurrers preliminary to the tendering of the final issue herein submitted, and error is predicated upon the action of the court in respect to these matters.   We have preferred, however, to determine the controversy upon its merits, and do not, therefore, discuss or consider these preliminary matters, since we find the defendants entitled to have the case reversed upon its merits.

Upon the whole record, we think the court erred in its conclusion; and the case is, therefore, reversed and re-

manded, with directions to the court to enter decree in accordance with this opinion.—*Reversed and remanded.*

PRESTON, C. J., LADD, EVANS, and STEVENS, JJ., concur.