NICHOLAS ANTON et al., Appellees, v. A. H. STANKE et al., Appellants.

No. 42047.

NOVEMBER 21, 1933.

McCoy & Beecher, for appellant A. H. Stanke.

John W. Gwynne, for appellant board of supervisors.

Ray R. Reed, for appellees.

KINDIG, J.—As indicated in the preliminary statement, this action involves the wrongful diversion of surface waters. Nicholas Anton and Henry J. Mahood, the plaintiffs appellees, own farms north of the farm owned by the defendant appellant A. H. Stanke. Anton's farm is west of that owned by Mahood. Between the farms of the appellees and the farm of the appellant Stanke there is a public highway. The highway runs in an easterly and westerly direction. On the highway, near the northeast corner of the farm owned by the appellant Stanke, and in the vicinity of the southeast corner of the farm owned by the appellee Mahood, there is a cement bridge. Formerly the bridge was made of wood, but in more recent years the wooden bridge has been removed, and the cement bridge constructed in its place. This bridge, including the old and the new, has been in that location as long as the witnesses can remember.

In the year 1925, Black Hawk county, through its board of supervisors, the defendants appellants, constructed a 12-foot square culvert on the highway approximately 1,400 feet west of the bridge. Such culvert was there placed in order to take care of surface waters, which the appellees allege that the appellant Stanke wrongfully diverted from the aforesaid bridge. After the waters wrongfully diverted passed through the culvert, they flowed upon the appellees' lands. When thus flowing through the culvert, the waters washed away the soil on the appellees' lands and destroyed crops to a material extent. Had the waters followed the natural watercourse over the land of the appellant Stanke, it is claimed by the appellees that they would have gone through the bridge, previously mentioned, and then down over the appellees' lands in a regular watercourse in a manner and way that would have done no damage. Consequently, the appellees seek to enjoin Black Hawk county and its supervisors from maintaining the culvert.

The district court issued the injunction, and the appellants appeal. It is claimed by the appellants that the district court reached the wrong result. Therefore, the appellants ask a reversal upon three propositions. These propositions will now be considered in the order presented.

I. At the outset, it is argued by the appellants that Stanke has not unlawfully diverted the surface waters from his land onto the public highway. There are two watercourses on the appellant Stanke's farm. These watercourses will be referred to as the north and the south. Apparently, from time immemorial the surface water

flowed through a natural watercourse from the southwestern part of the appellant Stanke's land in a northeasterly direction to the bridge on the highway. This is the south watercourse. Through that watercourse there were drained not only the land of the appellant Stanke, but other lands lying in a south and southwesterly direction as well. That drainage area included from 800 to 900 acres.

Commencing at the bridge, the natural drainage course, according to a preponderance of the evidence, extended southwesterly to the west line of the farm owned by the appellant Stanke. The point where the natural watercourse thus crossed the west line of the appellant Stanke's land was apparently 2,100 feet west of the bridge and 1,300 feet south of the highway. Because the water thus flowed across the appellant Stanke's land in the manner and way just described, portions of the land could not be cultivated. So in the year 1917 the appellant Stanke dug a ditch along the west line of his premises to divert the surface water. Such ditch commenced on the south watercourse at a point on the west line of the appellant Stanke's land 1,300 feet south of the highway. There appears to be another drainage system coming from the lands west of the appellant Stanke's farm, near the highway, through a natural ditch about 200 feet from the highway on the west line of the appellant Stanke's farm. That is the north watercourse. Accordingly the ditch dug by the appellant Stanke on the west line of his farm extended northward from the south watercourse, before described, for a distance of 1,100 feet, where it emptied into the last-described natural ditch (or north watercourse) coming in from the west. After entering the appellant Stanke's farm from the west about 200 feet south of the highway, the natural ditch continued also in a northeasterly direction to a point on the highway about 500 feet east of the west line of the appellant Stanke's farm. At that place the natural ditch emptied into a ditch constructed and maintained along the south side of the highway. When emptying into the highway ditch, the water then flowed eastward to the bridge previously mentioned.

It seems that the surface water flowing from the west through the natural or north ditch into the highway ditch was of very much less volume than the water which flowed across the appellant Stanke's farm through the south watercourse, into the bridge from the southwest. Subsequent to the construction of the new ditch by

the appellant Stanke, however, the surface water which formerly flowed past a point 1,300 feet south of the highway on the west line of the Stanke farm, northeasterly to the bridge, came from the south watercourse down the west line of the Stanke farm, in the newly constructed ditch, into the natural ditch in the northwest corner, and then into the highway ditch in an enormous volume. By thus diverting the water, the appellant Stanke was enabled to cultivate some of the land previously untillable in the natural watercourse southwest of the bridge. In order to let this increased flowage of surface water, diverted down the west line of the appellant Stanke's farm, through the highway, the culvert before mentioned was constructed by the supervisors. As before explained, after the culvert was constructed, great volumes of this water, which formerly went through the bridge, rushed through the culvert onto the appellees' lands and caused the damages before mentioned.

While there is a dispute in the record concerning the point, it appears by a preponderance of the evidence that the ditch newly constructed by the appellant Stanke was not through a natural watercourse. On the other hand, the natural watercourse, it appears from a preponderance of the evidence, flowed from a point 1,300 feet south of the highway on the west line of the appellant Stanke's farm, northeasterly to the bridge. Manifestly, therefore, the appellant Stanke wrongfully diverted the surface waters from their natural watercourse, down the west line of his farm onto the highway. Section 7736 of the 1931 Code provides:

"Owners of land may drain the same in the general course of natural drainage by constructing open or covered drains, discharging the same in any natural watercourse or depression whereby the water will be carried into some other natural watercourse, and when such drainage is wholly upon the owner's land he shall not be liable in damages therefor. Nothing in this section shall in any manner be construed to affect the rights or liabilities of proprietors in respect to running streams."

When construing this section, it has been said by this court that the legislation there enacted is merely a restatement of the law "which heretofore existed in this commonwealth". Board of Supervisors of Pottawattamie County et al. v. Board of Supervisors of Harrison County et al., 214 Iowa 655, local citation 670, 241 N. W. 14, 21. After the passage of the statute above named, as thus in-

terpreted, this court said, in Miller v. Hester, 167 Iowa 180, reading on pages 184 and 185, 149 N. W. 93, 95:

"The general rule is that the owner of the dominant estate may not, by artificial means, concentrate at one point surface water diffused over the surface of his land, and discharge it in a mass upon the lower land; but this rule does not apply to natural depressions or drainways through which the surface water on the higher land drains onto the lower land. The great weight of authority seems to be that the flow of surface water along such depressions or drains may be hastened and increased by artificial means, so long as it is not diverted from the natural course of drainage. The very purpose of drainage is to gather the water from the surface of the ground into a channel and discharge it at some particular point. Drainage would be wholly ineffectual in the accomplishment of its purpose if this were not permitted."

Therefore, it seems that the rule under the statute now is that the upper proprietor may drain his land through natural watercourses in a way to increase the water that is to flow over the servient land, providing the increase is not too great or in such unnatural quantities as to be the cause of substantial injury. Thus a limit has been fixed by this court even when the drainage contemplated is under the foregoing statute. What is meant by unusual manner and unusual quantities has not been defined. Undoubtedly much would depend upon the facts and circumstances of each case. However that may be, it is important here to note that there is a limit to the manner and quantity in which water may be drained by the individual landowner from the dominant to the servient land. In addition to the foregoing, it is to be recognized that although to a certain extent a dominant landowner may increase the flow of the drainage water which falls to the servient land, yet he cannot thus drain such water "in a different manner than the same would naturally and ordinarily have gone in the regular course of drainage", and thereby do substantial damage to the servient estate. Board of Supervisors v. Board (214 Iowa 655), supra, local citation 672 and 673, 241 N. W. 14. To the same effect, see Obe v. Pattat et al., 151 Iowa 723, 130 N. W. 903; Valentine v. Widman, 156 Iowa 172, 135 N. W. 599; Martin v. Schwertley, 155 Iowa 347, 136 N. W. 218, 40 L. R. A. (N. S.) 160; Jontz v. Northup, 157 Iowa 6, 137 N. W. 1056, Ann. Cas. 1915C, 967; Miller v. Hester,

167 Iowa 180, 149 N. W. 93; Pascal et al. v. Hynes, 170 Iowa 121, 152 N. W. 26; Thomas v. City of Grinnell, 171 Iowa 571, 153 N. W. 91; Lamb v. Stone, 178 Iowa 1268, 160 N. W. 907; Pascal et al. v. Donahue et al., 170 Iowa 315, 152 N. W. 605; Brightman v. Hetzel et al., 183 Iowa 385, 167 N. W. 89; Conklin v. City of Des Moines, 184 Iowa 384, 168 N. W. 874; Cresap v. Livingston, 193 Iowa 488, 185 N. W. 925; Estes et al. v. Anderson et al., 204 Iowa 288, 213 N. W. 566.

We said, in Obe v. Pattat (151 Iowa 723, 130 N. W. 903), supra:

"In other words, the general doctrine which recognizes a merely technical invasion of one's premises or the infliction of a merely nominal injury as sufficient grounds for invoking the remedies of the law has here no application. To lay it down as law that no man may so ditch or drain his premises that surface water shall be discharged therefrom in any other manner or at any other place or in any other quantities than would characterize its flow were the land left in a state of nature would be to effectively block the progress of agricultural improvement over a very large part of the state. The purpose and essence of drainage is to interfere with natural conditions as to surface water, to gather it into tiles or open ditches, and convey it to some place of discharge."

"As construed by the court, [the] rule, so far as it applies to the case before us, is that, while the owner of the dominant estate may insist on the surface waters having free flow from his lands in accordance with natural conditions and may himself interfere with such flow so far as the same is affected by the ordinary operations of good husbandry, he cannot lawfully collect into a mass and discharge upon his neighbor's premises 'in greatly increased or unnatural quantities to the substantial injury of the latter'." Obe v. Pattat (151 Iowa 723, 130 N. W. 903), supra.

"* * * As thus stated, it will be observed that to call the law into action for the defense of the servient estate, the collection and discharge of water thereon *in other than the place of its normal flow* with the land in a state of nature it must be in 'greatly increased or unnatural quantities', and that the damages which will sustain a right of action for such alleged wrong must be 'substantial' in character." Obe v. Pattat (151 Iowa 723, 130 N. W. 903),

supra. See, also, Jontz v. Northup (157 Iowa 6, 137 N. W. 1056, Ann. Cas. 1915C, 967), supra.

Applying the foregoing rule, then, to the case at bar, it is apparent that the appellant Stanke materially diverted the waters from their natural course. When thus diverting the waters, he changed the natural course of great volumes thereof. He caused this diverted volume of water to flow onto the highway, and the supervisors, by constructing the culvert, thereby assisted the appellant Stanke in continuing that flow onto the appellees' land. By so doing, the appellant Stanke, as well as the supervisors, "greatly increased" the normal flow of water at that point and permitted unnatural quantities thereof to flow upon the appellees' lands at a point where it otherwise would not have gone. Such increased and unnatural quantities of water coming through the culvert inflicted damages upon the appellees in a "substantial character". While, as indicated by the cases cited, it is possible under some circumstances that the dominant land may cause surface waters to flow upon the servient land at a different place than it ordinarily would flow and in an increased amount, yet the owner of the dominant land cannot thus increase the flowage or change the natural course of the surface water if by so doing the flowage on the servient land will be greatly increased and the damages done thereby will be substantial in character. See cases above cited.

II. In the second place, it is argued by the appellants that the appellant Stanke, when digging the ditch on the west line of his farm, thereby only made it possible to drain the surface waters from his land into a natural watercourse on his own land.

As before indicated, the 1,100-foot ditch constructed by the appellant Stanke on the west line of his farm was not through a natural watercourse. There was, however, a natural watercourse in the northwest corner of the farm, as previously explained. Apparently, therefore, it is the appellants' contention that the appellant Stanke had a right to drain the surface water on his farm from one watercourse to another. Under some circumstances, it has been said, as indicated in the foregoing cases, that the watercourse on a farm need not necessarily be followed if the water finally comes out at the place it would come in the natural watercourse when emptying onto the next estate, or if the diversion of the water is in such small amount as not to cause substantial damages.

On the other hand, however, the dominant owner cannot gather large quantities of water "out of the ordinary and natural course of drainage, and discharge the same upon the servient estate, to its substantial damage, in largely increased quantities, or at a" materially different place "than it would usually and ordinarily have gone, in the natural course of drainage". Cresap v. Livingston (193 Iowa 488, 185 N. W. 925, 927), supra; Brightman v. Hetzel et al. (183 Iowa 385, 167 N. W. 89), supra; Wirds v. VierKandt, 131 Iowa 125, 108 N. W. 108; Kopecky v. Benish, 138 Iowa 362, 116 N. W. 118; Valentine v. Widman (156 Iowa 172, 135 N. W. 599), supra; Miller. v. Hester (167 Iowa 180, 149 N. W. 93), supra; Estes et al. v. Anderson (204 Iowa 288, 213 N. W. 566), supra; Board of Supervisors v. Board (214 Iowa 655, 241 N. W. 14), supra.

Obviously, therefore, the appellant Stanke, in 'materially changing the course of the surface water, brought it down upon the highway in enormously increased amounts, and, when the supervisors constructed the culvert, the water went through onto the appellees' lands to their substantial damage. This the appellant Stanke did not have the legal right to do. See the cases above cited.

█ III. It is finally said by the appellants that assuming the unlawful diversion of the water by the appellant Stanke, yet the supervisors of Black Hawk county had a right to construct the culvert in order that such waters might flow "in (their) regular course across the" appellees' lands. See Schofield v. Cooper et al., 126 Iowa 334, 102 N. W. 110; Schwartz v. Wapello County et al., 208 Iowa 1229, 227 N. W. 91; Hinkle et al. v. C., R. I. & P. Ry. Co., 208 Iowa 1366, 227 N. W. 419; Hayes et al. v. Oyer, 164 Iowa 697; 146 N. W. 857; Brightman v. Hetzel et al. (183 Iowa 395, 167 N. W. 89), supra; Lessenger v. City of Harlan, 184 Iowa 172, 168 N. W. 803, 5 A. L. R. 1523.

In the first place, the diverted water from Stanke's land, after running through the culvert, did not flow in its regular course across the appellees' lands. The regular course for the diverted water would have been through the bridge before described, and then down a natural waterway over the appellees' lands. Counties as well as individuals will be enjoined from wrongfully diverting large and excessive volumes of water from their natural course onto the servient land to its substantial damage. Holmes v. Calhoun County, 97 Iowa 360, 66 N. W. 145; Schofield v. Cooper (126 Iowa

334, 102 N. W. 110), supra; Brightman v. Hetzel et al. (183 Iowa 395, 167 N. W. 89), supra; Estes et al. v. Anderson (204 Iowa 288, 213 N. W. 566), supra. See, also, Beers et al. v. Gilmore City, 197 Iowa 7, 196 N. W. 602; Conklin v. City of Des Moines (184 Iowa 384, 168 N. W. 874), supra.

Under a preponderance of the evidence, even the excess water diverted by the appellant Stanke would have flowed along the ditch on the south side of the highway to the bridge had the culvert not been constructed. Both Stanke and the county are defendants in this action. Consequently, the district court, under the circumstances, properly enjoined, first, the maintenance of the culvert; and, second, the discharge of the diverted surface waters through the highway onto appellees' lands in any other place than at the bridge in the natural course of drainage. As previously indicated, there is a natural ditch coming from the lands west of the farm owned by the appellant Stanke, which enters the latter's farm through the west line about 200 feet south of the highway. This natural ditch, as previously explained, enters the highway about 500 feet east of the west line of Stanke's farm. Some comparatively small amount of surface water, as before indicated, normally flowed down this natural ditch to the highway, where, for many years, it has been carried in what is called the highway ditch on the south side of the road eastward to the bridge thereon. Whether this natural surface water coming down the aforesaid natural ditch might run northward over the appellees' lands before it reaches the bridge were it not for the highway embankment and ditch, we need, and therefore do, not now decide. Nor do we decide that the county may not at some future time, by the use of a culvert or otherwise, divert the water naturally coming from the natural ditch across the highway onto the appellees' lands, if, in fact, such course is the natural course of drainage therefor. That point is not materially involved, and consequently we do not decide it.

No relief is asked by the county against the appellant Stanke. Therefore, the district court granted no such relief.

Because of the record, it is manifest that the judgment and decree of the district court is right, and should be affirmed. Accordingly, it is affirmed.—Affirmed.

ALBERT, C. J., and STEVENS, KINTZINGER, and MITCHELL, JJ., concur.